1  MARC S. HINES (SBN 140065)
   mhines@lawhhp.com
2  CHRISTINE EMANUELSON (SBN 221269)
   cemanuelson@lawhhp.com
3  ELAN J. DUNAEV (SBN 310060)
   edunaev@lawhhp.com
4  **HINES HAMPTON PELANDA LLP**
   30 Executive Park, Suite 210
5  Irvine, California 92614
   Tel.:  (714) 513-1122
6  Fax:   (714) 242-9529

7  Attorneys for Defendant
   Crestbrook Insurance Company
8

9                    **UNITED STATES DISTRICT COURT**

10                  **CENTRAL DISTRICT OF CALIFORNIA**

11  YURY KAPGAN, an individual,          | **Case No.:**

12               Plaintiff,               | [Lower Court Case No.:
                                          | 20SMCV00885, Superior Court for the
13        v.                              | County of Los Angeles]

14  CRESTBROOK INSURANCE
    COMPANY, and DOES 1-50, inclusive,   | **NOTICE OF REMOVAL BY
15                                        | DEFENDANT CRESTBROOK
                 Defendant.              | INSURANCE COMPANY OF
16                                        | AMERICA; AND DEMAND FOR
                                          | JURY TRIAL**
17

18

19        **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR**

20  **THE CENTRAL DISTRICT OF CALIFORNIA**:

21        Defendant Crestbrook Insurance Company ("Crestbrook") hereby gives

22  notice of the removal of this action to the United States District Court for the

23  Central District of California pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  In

24  support, Crestbrook states as follows:

25                          **INTRODUCTION**

26        1.    This action is a civil action on which this Court has original jurisdiction

27  under 28 U.S.C. § 1332, and is one that Crestbrook may remove to this Court

28
                                    1

1  pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between
2  citizens of different states and the matter in controversy exceeds the sum of $75,000,
3  exclusive of interest and costs.

4      2.      Plaintiff Yury Kapgan ("Plaintiff") filed a Complaint in this action on
5  July 1, 2020 in the Superior Court of the State of California for the County of Los
6  Angeles, entitled *Yury Kapgan. v. Crestbrook Insurance Company,* Case No.
7  20SMCV00885 (the "State Court Action").

8      3.      On July 15, 2020, Crestbrook was served via it's agent for service of
9  process, CSC, with a copy of the Summons and Complaint in the State Court
10  Action.  A true and correct copy of the Summons, Complaint, and Case Assignment
11  package served on Crestbrook is attached hereto as **Exhibit A.**

12      4.      On August 13, 2020, Crestbrook filed an Answer in the State Court
13  Action, a true and correct copy of which is attached hereto as **Exhibit B**.

14                     **DIVERSITY OF CITIZENSHIP**

15      5.      Complete diversity of citizenship exists among Plaintiff and
16  Crestbrook.

17      6.      Plaintiff specifically alleges that he is and was at all relevant times a
18  resident of the County of Los Angeles, California, and that the loss at issue occurred
19  at his primary residence home located in Santa Monica, California, located in Los
20  Angeles County.  (See **Exhibit A**, *Complaint, ¶¶ 6, 13*.)  A party's residence is
21  "prima facie" evidence of domicile.  State Farm Mut. Auto. Ins. Co. v. Dyer, 19
22  F.3d 514, 520 (10th Cir. 1994).  Accordingly, Plaintiff's own allegations establish
23  that he is and was, at all material times, a citizen of California.

24      7.      Crestbrook is, and was when this action was filed, an Ohio insurance
25  company incorporated, organized, and existing under the laws of the State of Ohio.
26  Crestbrook's corporate headquarters and principal office is located at One
27  Nationwide Plaza in Columbus, Ohio.  Columbus, Ohio is the actual center of

28

direction, control, and coordination of Crestbrook.  As a result, Crestbrook's principal place of business is the State of Ohio, and Crestbrook is deemed to be a citizen of Ohio.  Plaintiff also specifically alleges in the Complaint that Crestbrook is, and at all relevant times was, an Ohio corporation, with its principal place of business in Ohio.  (See **Exhibit A**, *Complaint, ¶ 7.*)

8.     DOES 1 through 50 in the Complaint are named and sued fictitiously, and their citizenship should be disregarded as a matter of law for purposes of removal on grounds of diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441(a), the latter of which provides that "citizenship of defendants sued under fictitious names should be disregarded."  See also Bryant v. Ford Motor Co., 886 F.2d 1526, 1528 (9th Cir. 1989).

9.     Accordingly, Crestbrook is informed and believes that complete diversity of citizenship with Plaintiff: (A) existed at the time Plaintiff filed the Complaint in the State Court Action; (B) existed at the time Plaintiff served Crestbrook with a copy of the Complaint; and (C) exists at the present time.

## AMOUNT IN CONTROVERSY

**A.     The Timing for Diversity Removal.**

10.     Federal Diversity Jurisdiction exists only where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

11.     A defendant generally must file a notice of removal within 30 days after receipt of the first pleading in a state court action that sets forth a removable claim.  28 U.S.C. § 1446(b)(1).

**B.     Summary of Plaintiffs' Allegations.**

12.     This case stems from a dispute over an insurance claim Plaintiff made under his homeowner's policy for a loss involving a pipe burst in his home.

CRESTBROOK'S NOTICE OF REMOVAL
AND DEMAND FOR TRIAL BY JURY

13.    Plaintiff alleges he purchased a homeowner's policy underwritten by Crestbrook with effective policy period dates of 10/22/18 to 10/22/19, with coverage limits of $1,653,455 for Dwelling Coverage (Coverage A), which Plaintiff alleges reflects Extended Replacement Cost Coverage.  (See **Exhibit A**, *Complaint, ¶¶ 14, 15.*)

14.    Plaintiff alleges, on or about January 2, 2019, there was an accidental occurrence at Plaintiff's home involving a burst pipe and water damage to the home. (See **Exhibit A**, *Complaint, ¶ 19.*)

15.    Plaintiff alleges that Crestbrook sent Plaintiffs a check in the amount of $76,370.24 as payment on his claim for repairs to property damage.  (See **Exhibit A**, *Complaint, ¶ 47.*)

16.    Plaintiff alleges Crestbrook also paid for Plaintiff's rental home through June 30, but Plaintiff incurred an additional $38,411 in rent through August 24, 2019, and these "out-of-pocket expenses" were in addition to "the $71,177 cost of repairs" Crestbrook has refused to cover. (See **Exhibit A**, *Complaint, ¶ 55.*)

17.    Under his breach of contract cause of action, Plaintiff alleges that he has "incurred damages in an amount according to proof at trial but in excess of $109,588." (See **Exhibit A**, *Complaint, ¶ 63.*)  Thus, Plaintiff contends that Crestbrook breached the homeowner's policy by not indemnifying him for that full amount of his loss.

18.    Plaintiff has sued Crestbrook for breach of contract and tortious breach of the implied covenant of good faith and fair dealing. (See **Exhibit A**, *Complaint.*) Plaintiff's Complaint prays for compensatory damages, interest, costs of suit, attorney's fees, and exemplary and punitive damages.  Under the breach of implied covenant of good faith and fair dealing cause of action, Plaintiff alleges he has suffered emotional distress. (See **Exhibit A**, *Complaint, ¶ 69(a).*)

**C.    The Requisite Amount in Controversy is Satisfied.**

19.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." <u>Dart Cherokee Basin Operating Co. v. Owens</u>, --- U.S. ---, ---, 135 S.Ct. 547, 554 (2014).

20.    The amount in controversy is the total "amount at stake in the underlying litigation." <u>Theis Research, Inc. v. Brown & Bain</u>, 400 F.3d 659, 662 (9th Cir. 2005).

21.    The allegations set forth above in Paragraphs 13-18 demonstrate that the amount in controversy in this suit exceeds the sum or value of $75,000.  Plaintiff specifically alleges that $109,588 for repairs to his home ($71,177) plus additional living expenses incurred by Plaintiff for the time period required to make the repairs to the home ($38,411) should be indemnified under his homeowner's policy in addition to what Crestbrook has already paid, plus attorney's fees, punitive damages, and emotional distress.

**D.    Defendant's Notice of Removal is Timely.**

22.    Crestbrook was served with a copy of the Complaint on July 15, 2020.

23.    As a result, this Notice of Removal is timely.

**CONCLUSION**

24.    On this date Crestbrook will serve a true and correct copy of this Notice of Removal on Plaintiff's counsel, and will file a copy of such Notice with the Clerk of the Superior Court of California for the County of Los Angeles.

25.    In addition, Crestbrook will also file a Notice of Stay of Proceedings on this date with the Clerk of the Superior Court of California for the County of Los Angeles, as a result of this Notice of Removal.  A true and correct copy of the Notice of Stay of Proceedings is attached hereto as **Exhibit C**.

26.    Based on the foregoing, Crestbrook removes the above action now pending in the Superior Court for the State of California, in and for the County of

CRESTBROOK'S NOTICE OF REMOVAL
AND DEMAND FOR TRIAL BY JURY

1  Los Angeles as Case No. 20SMCV00885, to the United States District Court for the
2  Central District of California. Defendant demands a trial by jury.
3
4  Dated:  August 13, 2020              **HINES HAMPTON PELANDA LLP**
5
                                     By:   */s/ Marc S. Hines*
6                                          Marc S. Hines
7                                          Christine Emanuelson
                                           Attorneys for Defendant
8                                          CRESTBROOK INSURANCE COMPANY
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CRESTBROOK'S NOTICE OF REMOVAL
AND DEMAND FOR TRIAL BY JURY

# EXHIBIT "A"



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 21757310**
**Date Processed: 07/15/2020**

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Electronic copy provided to:** | Ashley Roberts |

| | |
|---|---|
| **Entity:** | Crestbrook Insurance Company<br>Entity ID Number  3286201 |
| **Entity Served:** | Crestbrook Insurance Company |
| **Title of Action:** | Yury Kapgan vs. Crestbrook Insurance Company and DOES 1-50 |
| **Matter Name/ID:** | Yury Kapgan vs. Crestbrook Insurance Company and DOES 1-50 (10372098) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Los Angeles County Superior Court, CA |
| **Case/Reference No:** | 20SMCV00885 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 07/15/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Yury Kapgan<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

Electronically FILED by Superior Court of California, County of Los Angeles on 07/01/2020 04:09 PM Sherri R. Carter, Executive Officer/Clerk of Court, by B. McClendon,Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Crestbrook Insurance Company; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Yury Kapgan

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Santa Monica Superior Court, 1725 Main Street, Santa Monica, CA 90401 | CASE NUMBER: *(Número del Caso):* 20SMCV00885 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Yury Kapgan, 143 Foxtail Drive, Santa Monica, CA 90402, 213-443-3000

| DATE: 07/01/2020 *(Fecha)* | Sherri R. Carter Executive Officer / Clerk of Court | Clerk, by *(Secretario)* | B. McClendon | , Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served


[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [x] on behalf of *(specify):* Crestbrook Insurance Company

   under: [x] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
           [ ] other *(specify):*
4. [x] by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

20SMCV00885

Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Mark Epstein

Electronically FILED by Superior Court of California, County of Los Angeles on 07/01/2020 04:09 PM Sherri R. Carter, Executive Officer/Clerk of Court, by B. McClendon, Deputy Clerk

1   Yury Kapgan
    143 Foxtail Drive
2   Santa Monica, CA 90402
3   143foxtaildrive@gmail.com

4   *In pro per*

5

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8              **COUNTY OF LOS ANGELES, WEST DISTRICT**

9

10  YURY KAPGAN, an individual,              **CASE NO. 20SMCV00885**

11              Plaintiff,                    **COMPLAINT FOR:**

12      v.                                    **(1) BREACH OF CONTRACT**
                                                  **(INSURANCE); AND**
13  CRESTBROOK INSURANCE COMPANY;
    and DOES 1-50, inclusive,                **(2) TORTIOUS BREACH OF IMPLIED**
14                                                **COVENANT OF GOOD FAITH AND**
            Defendants.                          **FAIR DEALING (BAD FAITH)**
15
                                              **[DEMAND FOR JURY TRIAL]**
16

17

18

19

20

21

22

23

24

25

26

27

28

                                                   COMPLAINT FOR BREACH OF CONTRACT
                                              AND TORTIOUS BREACH OF IMPLIED COVENANT

1                **THE NATURE OF THIS ACTION**

2        1.     In this insurance coverage action, Plaintiff Yury Kapgan ("Plaintiff" or the

3 "Insured") seeks a judgment that his insurer, Defendant Crestbrook Insurance Company (d/b/a

4 Nationwide Private Client), an Ohio corporation doing business in California ("Crestbrook"), and

5 (if applicable) DOES 1 through 50 (collectively, "Defendants") are obligated to fully reimburse

6 Plaintiff for losses incurred in connection with property damage sustained at Plaintiff's Santa

7 Monica home—losses covered under a homeowner's property policy the Plaintiff purchased from

8 Crestbrook.

9        2.     The insured premises is Plaintiff's home and primary residence where he lives with

10 his family. Plaintiff and his family have resided in their home since approximately October 2015.

11 Plaintiff's home is located on a historic street in Santa Monica and was built for and by the general

12 contractor who built all the homes on Plaintiff's street in or around the 1950s. On information and

13 belief, Plaintiff's home was once part of a large estate belonging to the late William Randolph

14 Hearst. To this day, certain vestiges of the estate remain on Foxtail Drive and are protected by the

15 city, such as the original custom iron gates leading to the estate as well as the iron fences, which

16 remain unique aspects of Plaintiff's home.

17        3.     On information and belief, the Hearst estate was sold to a real estate developer who

18 subdivided the property into no less than 12 single family homes. On information and belief, the

19 contractor who built all the homes purchased the corner lot for his family and built the structure

20 which eventually became Plaintiff's home. As it was the middle of the 20th century, the contractor

21 built his home in the then very "modern" style, now referred to as mid-century modern. The home

22 was built with premium building materials and craftsmanship and has withstood the test of time.

23 Plaintiff has honored the home as it should be and has insured it as a luxury property.

24        4.     In or around early 2019, one of the copper pipes in a wall accidentally burst causing

25 extensive water damage. Unfortunately, the water damage permeated the floors, irreparably

26 damaging the beautiful mahogany solid wood floors, among other areas. Plaintiff and his family

27 were forced to move into a rental unit. At the outset, Crestbrook failed to conduct a prompt, full

28 and complete investigation of the loss; failed to fully and timely indemnify its Insured for the

COMPLAINT FOR BREACH OF CONTRACT
AND TORTIOUS BREACH OF IMPLIED COVENANT

1   dwelling and personal property replacement costs as well as additional living expenses covered by
2   the insurance contract; and further failed to deal with its Insured in good faith.

3       5.    As Crestbrook has refused to fully reimburse its Insured for these losses, it has
4   breached its insurance contract with Plaintiff. Since Crestbrook has put its own financial interest
5   above Plaintiff's rights and reasonable expectations to benefits under the insurance contract,
6   Plaintiff further seeks relief for breach of the covenant of good faith and fair dealing.

7   **PARTIES**

8       6.    Plaintiff is and at all relevant times was a resident of the State of California, County
9   of Los Angeles, and insured under insurance policies issued to him by Defendants.

10       7.    Plaintiff is informed and believes, and on that basis alleges, that Defendant
11   Crestbrook is, and at all relevant times was, an Ohio corporation, with its principal place of business
12   in Ohio, and was at all relevant times also doing business in the County of Los Angeles, State of
13   California. Plaintiff is informed and believes, and on that basis alleges, that Crestbrook is and was
14   at all times mentioned herein qualified to do business in California.

15       8.    The true names and capacities, whether individual, corporate, associate,
16   representative or otherwise, of Defendants named herein as DOES 1 through 50, inclusive, are
17   unknown to Plaintiff, who therefore sues such Defendants by said fictitious names. Plaintiff will
18   amend this Complaint to show their true names and capacities when the same have been ascertained.

19       9.    Plaintiff is informed and believes, and on that basis alleges, that at all times
20   mentioned herein each of the Defendants mentioned herein was the affiliate, agent, servant and
21   employee of the other Defendants, and in doing the things alleged, was acting in the course and
22   scope and authority of such affiliation, agency, service and employment, with the permission and
23   consent of the other co-Defendants, and that each act of said co-Defendants was ratified by the
24   others.

25       10.    Plaintiff is informed and believes, and on that basis alleges, that the Defendants,
26   including DOES 1 through 50, and each of them, acted within the course and scope of their
27   employment, authority, and/or apparent authority of the officer, director, employee and/or
28   representative of the other Defendants, and each of them.

1    11.    Plaintiff is informed and believes, and on that basis alleges, that at all times herein

2    mentioned each of the Defendants, including each Defendant sued as a DOE, aided and abetted, and

3    acted in concert with and/or conspired with, each and every other Defendant to commit the acts

4    complained of herein, and to engage in the course of conduct and the business practices complained

5    of herein.

6                               **JURISDICTION AND VENUE**

7    12.    The Court has proper jurisdiction over this action under Section 410.10 of the

8    California Code of Civil Procedure.  Plaintiff is informed and believes, and on the basis of such

9    information and believe alleges, that Crestbrook is, and at all relevant times has been, a corporation

10   engaged in the business of providing insurance to persons and entities in the County of Los Angeles

11   and the State of California.

12   13.    Venue is proper in this Court pursuant to Section 395.5 of the California Code of

13   Civil Procedure because Los Angeles County is the place where the obligation or liability arises.

14   The loss at issue occurred in Plaintiff's home located in Santa Monica, California, which is located

15   in Los Angeles County.  In addition, since Plaintiff is a Los Angeles County resident, venue is

16   proper because Los Angeles County is the place where the contract was breached.

17                               **THE INSURANCE POLICY**

18   14.    Plaintiff purchased a Nationwide Private Client homeowners policy underwritten by

19   Crestbrook Insurance Company, policy number H000038782-04 effective 10/22/2018 to

20   10/22/2019 (the "Policy").  Among other things, the Policy insures Plaintiff's primary residence

21   located at 143 Foxtail Drive, Santa Monica, California, 90402-2047, together with the contents

22   thereof, as well as the loss of use thereof.  A true and correct copy of the Policy is attached as

23   **Exhibit A** and is incorporated into this complaint by reference as if fully set forth herein.

24   15.    Plaintiff was insured under the Policy against multiple property perils with coverage

25   limits of $1,653,455 for Dwelling Coverage (Coverage A).  (Ex. A, Declarations, p. 4.)  This

26   reflected the Extended Replacement Cost Coverage purchased (*id.*) which "is intended to provide

27   for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical

28   depreciation.  Many policies pay only the dwelling's actual cash value until the insured has actually

1   begun or completed repairs or reconstruction on the dwelling.  Extended Replacement Cost provides
2   additional coverage above the dwelling limits up to a stated percentage or specific dollar amount"
3   (*id.*, p. 10).

4       16.   Under Coverage D—Loss of Use coverage—the Policy states that "[i]f a covered
5   loss requires you to leave the Residence Premises, we will pay the reasonable increase in living
6   expenses you incur to maintain your normal standard of living.  We cover this reasonable amount
7   of time required to restore your Dwelling or other permanent structure to a habitable condition…"
8   (Ex. A, p. 13.)  Coverage D is not subject to any limit of liability; rather, the insured is entitled to
9   coverage for "Actual Loss Sustained."  (*Id.*, Declarations, p. 4.)

10       17.   Plaintiff timely and fully paid the premiums for the Policy.  At all relevant times, the
11   Policy was in full force and effect, providing the applicable insurance coverage for Plaintiff.

12       18.   The Policy is a renewal of one originally purchased in 2015 and renewed each year
13   thereafter.   On information and belief, the 2015/16 policy, as modified by the 2018/19 Policy,
14   constitutes the complete terms and conditions.  A true and correct copy of the 2015/16 policy is
15   attached as **Exhibit B** and is incorporated into this complaint by reference as if fully set forth herein.

16                                             **THE CLAIM**

17       19.   On or about January 2, 2019, there was an accidental occurrence at Plaintiff's home,
18   namely, a burst pipe which resulted in extensive water damage to the home.

19       20.   The accidental occurrence and its resulting damage was a covered loss under the
20   Policy.

21       21.   Plaintiff made a timely insurance claim, to which Defendants assigned a claim
22   number of CLM-00047650.

23       22.   Defendants initially assigned an insurance adjuster, Michael Harness, to act as its
24   agent for purposes of investigating and paying the claim and otherwise discharging their obligations
25   under the insurance policy and California law, and then assigned a different adjuster, Justin Haskell,
26   for the same purpose.

27       23.   The water from the burst pipe caused extensive damage to the floors in the home and
28   associated drywall, among other things.

1       24.    Given the extensive damage to the property and required repairs, Defendants agreed
2   to pay for Plaintiff and his family to rent a different home nearby while the repairs were performed.

3       25.    On January 30, 2019, with the approval of Defendants, Plaintiff executed a lease
4   agreement on a rental property located in Santa Monica, with a term commencing on February 2,
5   2019 through May 31, 2019, with an option to renew month-to-month at Plaintiff's sole option.  The
6   payment on the lease was guaranteed by Defendants' agent, CRS Temporary Housing Insurance
7   Company ("CRS").  The monthly rent specified in the contract was $21,650.

8       26.    On February 3, 2019, Plaintiff moved his family out of their home and into the rental
9   property.

10       27.    In or about February 2019, Defendants engaged their "Preferred Repair Network
11   (PRN) contractor," Bartwood Construction ("Bartwood"), to assess the damage in Plaintiff's home
12   and coordinate mold testing and remediation.

13       28.    Defendants began the process of remediation in late February, 2019, having Plaintiff
14   engage Alliance Environmental Group, Inc. to perform the remediation, and True-Eco
15   Environmental Consulting to perform the post-remediation inspection.  Plaintiff and Defendants
16   received the post-remediation report from True-Eco Environmental Consulting on or about March
17   15, 2019.

18       29.    Bartwood attempted to continue drying affected areas in the home after receipt of the
19   aforementioned post-remediation report.   In an email dated March 21, 2019, Bartwood's
20   representative indicated that Bartwood had removed the drying equipment on approximately March
21   19. He also indicated that he met with Mr. Haskell on March 19 "in order to come to an agreed
22   scope of repairs" for the property and that Mr. Haskell "will be generating an estimate accordingly
23   & we will collaborate in efforts to provide an overall proper scope of repairs to put your home back
24   to pre-existing conditions."   Bartwood's representative also stated: "I found some remnant
25   hardwood flooring in your garage & took a few planks with me in order to find a match."
26   Apparently, after having spoken with Mr. Haskell, the suggestion from Bartwood's representative
27   was that if he could find a wood that matched the upstairs flooring which was not directly affected

28

COMPLAINT FOR BREACH OF CONTRACT
AND TORTIOUS BREACH OF IMPLIED COVENANT

1 | by the leak in the home, then Plaintiff could simply install such a matching flooring in the affected
2 | areas to maintain uniformity of appearance.

3 |     30.    On March 25, 2019, Bartwood's representative claimed that he found an exact match
4 | for the hardwood floor from the garage, and dropped a sample at the property on March 27. That
5 | day, Plaintiff inspected the sample and informed Mr. Haskell and Bartwood's representative: "While
6 | the sample you left in the kitchen is indeed similar to the sample you got from the garage, it is not
7 | similar to the floor that's actually installed in the living/dining room etc. If you look at the floor
8 | actually installed, it has much more variation in color. The samples are uniform (or very close to
9 | uniform) in color. So, unfortunately, this isn't a match or close to it."

10 |     31.    On information and belief, Bartwood's representative did not obtain a sample of the
11 | hardwood floor that was actually installed on the property. Instead, as he indicated, he took a sample
12 | from the garage, which was not the same floor installed in the home.

13 |     32.    On March 27, 2019, Mr. Haskell indicated that Defendants would be providing an
14 | estimate to cover "the replacement of the damaged and continuous wood floor areas. This includes
15 | removal and replacement in the entry/dining room combo, the living room, den, and master
16 | bedroom." However, Mr. Haskell also indicated that "Areas where the floor transitions to a new
17 | type of flooring, such as the kitchen and master bathroom tile, will not be covered under the claim,
18 | as they are not damaged, nor are they continuous. To confirm, we will not be covering the cost of
19 | the replacement in those areas (walk-in-closet off the master bathroom, small hallway near the stairs,
20 | stairs, upper landing, upper floor bedrooms). The wood flooring in those areas show signs of wear
21 | and tear, however, are not water damaged, nor are they continuous."

22 |     33.    The following day, on March 28, 2019, Plaintiff responded to question the denial of
23 | coverage for replacement of the "non-continuous" areas of flooring, explaining as follows: "The
24 | master bedroom and the master closet have wood floors that are separated by perhaps one foot of
25 | tile that's part of the master bathroom. These areas are next to each other. Similarly, the dining
26 | room floor is separated from the hallway floor that leads to the powder room and the upstairs by
27 | perhaps two feet of tile that comes from the kitchen. These areas are also next to each other. Not
28 | just line of sight – but for all practical purposes, next to each other." Plaintiff also questioned

1  whether it really was the case that Defendants do not "cover replacement of areas that are right next

2  to the affected areas simply because they are not touching? Has that never happened?"  Defendants

3  never responded to this last inquiry.

4      34.    Instead, on March 29, Mr. Haskell responded as follows: "The areas you mentioned

5  would be reviewed for 'Reasonable uniform appearance' for matching.  In your case, the areas are

6  separated by tile and the exact floor material has been found.  Because the exact material was found,

7  the non-damaged areas, such as the Den and Entry/Dining areas could technically be laced in,

8  however, because those floors are continuous, I included the replacement."  In other words, Mr.

9  Haskell suggested that because an "exact floor material" to the non-covered areas purportedly was

10 obtained, Plaintiff could simply install the replacement "exact floor material" in the covered areas

11 so that there would be a "reasonable uniform appearance" between the areas.

12     35.    Mr. Haskell was, in fact, mistaken about his assessment that the "exact floor material

13 has been found."  As explained to him previously, the sample obtained was uniform in color,

14 whereas the installed floor had great variation in color.  Thus, these floors were not reasonably

15 uniform in appearance to each other.  Indeed, Mr. Haskell appeared to acknowledge the variation in

16 color of the existing installed floors in his March 29 email, indicating that "The wear and tear is not

17 consistent, nor is the color of the flooring."  He followed this statement by including a picture of

18

19

20

21

22

23

24

25

26

27

28

1  one area of the installed floor, which clearly demonstrates the color variation which was not present

2  in the sample:



14  36.  On March 29, 2019, Defendants sent Plaintiff their repair estimate for the damage,

15  based on an evaluation from their preferred contractor, Bartwood.  This estimate totaled $76,370.24.

16  The estimate did not include repairs for the non-covered areas described above, in particular, the

17  hallway floor that leads to the powder room, the stairs, and the flooring in the upstairs areas

18  (collectively, the "Non-Covered Areas").

19  37.  After some research, Plaintiff learned that Defendants' preferred contractor,

20  Bartwood, received low reviews for its work on third party review sites such as Yelp.  Indeed, as of

21  the date of this Complaint, Bartwood has received an average of 3 out of 5 stars on Yelp.  As an

22  example, one review from July 29, 2018 states: "These guys are the worst.  Stay away.  I had water

23  damage in my kitchen and my insurance selected these jokers.  I had 2-3 project managers because

24  they kept quitting from the company.  They messed up the first time they tried refinishing my floor

25  and had to redo it again.  The project took FOREVER.  They also messed up in the countertops they

26  had installed and had to replace those again.  Lastly, they did not apply any butcher block oil or

27  sealant to the countertops and I had to hire a new contractor to do that.  These guys are a disaster.

28  Stay far far away."  Another review from October 27, 2017 states: "Our insurance company referred

1  us to Bartwood after a flood in an investment building we own in Anaheim   We are not new to
2  working with contractors. We've owned 3 apartment buildings for approx 20 years.  Through the
3  years we've worked with many contractors; some have provided great experiences, some mediocre
4  and some frustrating. Our experience with Bartwood was at the bottom of the barrel.  They were
5  unresponsive, never met time guidelines they set, took days to return calls, basically lacked
6  professionalism in every way.  Out of sheer frustration my husband ended up taking time off work
7  to finish some aspects of the job just to get our tenant back into their home.   If you thrive on
8  frustration....they're your company, otherwise keep looking!"

9       38.    Thus, Plaintiff was reasonably concerned with entrusting repairs to his home with a
10 subpar contractor. As part of his due diligence, Plaintiff interviewed several contractors to perform
11 the repairs.   After selecting one contractor who specializes in premium homes and obtaining a
12 detailed quote totaling $102,000, Plaintiff sent such quote to Mr. Haskell on April 15, 2019.   In
13 response, Mr. Haskell indicated that the "bid does not breakdown the costs by room and/or trade"
14 and requested Plaintiff to "obtain a further breakdown."  Plaintiff could not obtain a more detailed
15 quote immediately, given that his chosen contractor was leaving the country for a few weeks.
16 Instead of waiting for his return, Plaintiff diligently sought and obtained another quote, this time
17 from Avanca Woodworks.

18      39.    On April 25, 2019, a "Property Claims Manager" for Defendants, Jennifer Patrick,
19 informed Plaintiff, inexplicably, that Defendants concluded the replacement floor found by
20 Bartwood "provides a reasonably uniform appearance with the existing floor" and that if Plaintiff's
21 preferred contractor disagreed, "please have them provide a written dispute over this issue,
22 explaining their reasoning for consideration."

23      40.    On April 26, 2019, Plaintiff provided notice of renewal of the lease on the rental
24 property to Defendants' agent, CRS, as was his sole right under the rental agreement.  On April 29,
25 CRS informed Plaintiff that Defendants denied the renewal, despite Plaintiff's sole right to renew
26 and without any further explanation.  The same day, Plaintiff asked Mr. Haskell for an explanation
27 of the denial, noting the following:

28

COMPLAINT FOR BREACH OF CONTRACT
AND TORTIOUS BREACH OF IMPLIED COVENANT

1       a.      Defendants did not provide any repair estimate from their own contractor

2   until March 29.

3       b.      Plaintiff submitted a bid from a different contractor on April 15, which

4   Defendants found unsatisfactory.

5       c.      During the foregoing period, the parties were discussing the issue of scope of

6   coverage on the existing flooring, including the Non-Covered Areas.  This issue is material to the

7   scope of work any contractor would perform at the house, and a predicate to beginning construction.

8   And only on April 25 did Defendants solicit further explanation from Plaintiff's chosen contractor

9   as to why the Non-Covered Areas must be replaced.

10      d.      The contemplated repairs could not be completed by the end of May (the end

11  of the initial term on the rental agreement), and Plaintiff could not move his family back into the

12  house while construction was underway.

13      e.      Plaintiff had yet to receive any payment from Defendants for any repairs.

14      41.     Despite Plaintiff not having received payment from Defendants to perform any

15  repairs, and the continued discussion between the parties over the proper scope of coverage, Mr.

16  Haskell claimed in an April 30, 2019 email that "The remaining repairs (drywall, flooring, and

17  painting) should not take more than a few weeks to complete. The Additional Living Expense

18  coverage only affords assistance during the reasonable period of restoration. As the reasonable

19  period of restoration has expired, we are unable to assist further."

20      42.     On May 1, 2019, Defendants' agent, CRS, sent the landlord of the rental property a

21  30-day notice to vacate, in contravention of the lease agreement which Defendants had approved.

22  The lease agreement provided Plaintiff with the option to renew month-to-month at Plaintiff's sole

23  option. Defendants' actions appeared to be a bad faith tactic to gain leverage in the parties' coverage

24  dispute.

25      43.     On May 2, 2019, Plaintiff explained to Defendants that the "reasonable period of

26  restoration" had not expired, and reiterated that he had not received any payment for repairs, and

27  that the parties continued to discuss the appropriate scope of repairs.  Plaintiff also asked Defendants

28  to rescind their improper 30-day notice to vacate.

COMPLAINT FOR BREACH OF CONTRACT
AND TORTIOUS BREACH OF IMPLIED COVENANT

44.     On May 10, Mr. Haskell sent a letter to Plaintiff in an apparent attempt to respond to Plaintiff's May 2 email, but failed to address or rescind Defendants' improper notice to vacate.  In fact, to Plaintiff's knowledge, Defendants never rescinded the notice.  Instead, Mr. Haskell stated that:

- "We have covered the replacement of the continuous flooring from the entry, living room, den, master bedroom, and office. We will not be covering the cost for the hallway, master closet, stairway, or upper level of the home."

- "We have received your request for an extension of your Additional Living Expenses. As previously discussed, the policy covers the reasonable period of restoration. The reasonable period of restoration was determined to be 2 to 3 months in order to complete the mitigation and all necessary repairs. We have considered and paid the Additional Living Expense coverage through May 31, 2019. We must respectfully reject your request for an extension."

- "Additionally, we have paid for the reasonable cost of repairs. We have an agreed repair estimate with a Preferred Repair Network (PRN) contractor, Bartwood Construction. . . . Any additional repair costs beyond our agreed estimated amount would be at your expense."

45.     On May 13, 2019, Plaintiff received an estimate from Avanca Woodworks to perform repairs, and forwarded the estimate to Defendants the following day.  That estimate totaled $147,547.50, including replacement of the Non-Covered Areas.  Without the Non-Covered Areas, the estimate totaled $115,657.70.

46.     On May 14, 2019, along with the estimate from Avanca Woodworks, in response to Defendants' April 25 request, Plaintiff also provided to Defendants a letter from Avanca Woodworks detailing the reasons why the areas of flooring that Defendants had refused to cover must be replaced.

47.     On or about May 14, 2019, Plaintiff finally received a check from Defendants in the amount of $76,370.24, based on the estimate provided by Defendants' preferred contractor.  This

1  payment did not include any allowance for the Non-Covered Areas, or any of the additional repair
2  costs estimated by Plaintiff's chosen contractor.

3      48.    On May 23, 2019, Mr. Haskell emailed Plaintiff as follows: "As you know, this
4  estimate [from Avanca Woodworks] is significantly higher than our repair estimate and the prior
5  estimate you submitted. I'm going to reiterate what has previously been stated, as we had an agreed
6  repair price with Bartwood, a PRN contractor, we will not be considering any additional payments
7  for the repairs. If you choose to hire a contractor who's costs come in higher than our estimate, you
8  would be responsible for the difference in cost. Additionally, we are not extending your Additional
9  Living Expenses. You have been given adequate time to complete the repairs. The delays caused
10  by your failure to complete the repairs, are not something Nationwide is responsible in covering the
11  costs for. I have advised CRS Temporary Housing of this as well."

12      49.    Despite having sought and received from Plaintiff's chosen contractor both a more
13  detailed estimate of repairs and an explanation as to why the expenses to replace the Non-Covered
14  Areas were appropriate and justified, Defendants never responded substantively to the
15  documentation supplied to them to explain why they believed any of these additional costs were
16  unjustified, or even attempted to discuss any of these issues with the contractor.

17      50.    Moreover, Defendants made claims they knew to be contrary to law, apparently in
18  the hope Plaintiff would simply capitulate. For example, Defendants' claim that Plaintiff should be
19  responsible for costs estimated by Plaintiff's chosen contractor which were above the costs
20  estimated by Defendants' "Preferred Repair Network" contractor is plainly contrary to applicable
21  insurance regulations, which provide that "the insurer shall . . . pay the difference between its written
22  estimate and a higher estimate obtained by the claimant" or "reasonably adjust any written estimates
23  prepared by the repair individual or entity of the insured's choice and provide a copy of the adjusted
24  estimate to the claimant." California Insurance Regulation § 2695.9(d).

25      51.    Likewise, given Plaintiff received partial payment from Defendants only in mid-
26  May, and given the ongoing discussions between the parties about the scope of coverage,
27  Defendants' position that Plaintiff was "given adequate time to complete the repairs" is non-sensical
28  and unreasonable on its face.

COMPLAINT FOR BREACH OF CONTRACT
AND TORTIOUS BREACH OF IMPLIED COVENANT

13

1      52.    Despite Defendants' completely unreasonable positions, Plaintiff began making the

2 arrangements with his chosen contractor to begin work shortly after receiving Defendants' partial

3 payment, even though Plaintiff would still need to come significantly out-of-pocket to complete the

4 required repairs.

5      53.    On May 28, 2019, in a final effort resolve the dispute between the parties, Plaintiff

6 sent a detailed letter to Defendants, discussing the aforementioned issues and describing how

7 Defendants' positions were unreasonable and contrary to law.

8      54.    On June 6, 2019, Ms. Patrick responded as follows: "Thank you for your recent

9 correspondence requesting re-review of both the flooring and your additional living expense

10 coverages.  We have completed a thorough review of all information available.  Our position

11 remains that we are unable to alter our scope for the flooring.  We are unable to assist you further

12 in this matter.  We will agree to extend the housing until June 30, 2019, to assist you with the repairs

13 to your dwelling as it was confirmed the payment issued March 29, 2019 had not been received."

14      55.    Although Defendants agreed to pay for Plaintiff's rental home through June 30, given

15 their multiple delays and tardy partial repair payment, Plaintiff incurred an additional $38,411 in

16 rent through August 24, 2019, before he and his family were able to move back into their home, as

17 well as associated moving and other expenses. These out-of-pocket expenses are in addition to the

18 $71,177 cost of repairs which Defendants have refused to cover (*i.e.*, the difference between the

19 estimate provided by Defendants' contractor, and the estimate provided by Plaintiff's contractor

20 which included repair of the Non-Covered Areas).

21      56.    Defendants have unreasonably refused to honor their coverage obligations.  They

22 omitted necessary repair items from the scope of work, underpriced the repair cost for many items,

23 refused to use like kind and quality building techniques and materials for the repair as called for by

24 the Policy, and refused to honor additional living expenses for the time required to complete the

25 repairs.

26                    **FIRST CAUSE OF ACTION**

27                       *(Breach of Contract)*

28      57.    Plaintiff incorporates herein each preceding paragraph of this Complaint.

COMPLAINT FOR BREACH OF CONTRACT
AND TORTIOUS BREACH OF IMPLIED COVENANT

1    58.    As set forth herein, at all times relevant Defendants insured Plaintiff's residence for
2    damage to the dwelling, personal property loss, and loss of use / additional living expense.

3    59.    On January 2, 2019, Plaintiff suffered a covered loss when there was an accidental
4    occurrence in his family's residence, a burst pipe which caused extensive damage both to the
5    structure and its contents.  No exclusions in the Policy apply that would preclude Defendants'
6    indemnity obligations for this insurance claim.

7    60.    Plaintiff made a prompt and timely claim to his insurance company for the damage
8    resulting from the occurrence.

9    61.    On information and belief, Plaintiff has paid all premiums and complied with any
10   and all conditions precedent to coverage under the Policy, or alternatively, such condition precedents
11   have been waived or are excused by virtue of Defendants' breaches.

12   62.    Defendants breached the Policy by failing to conduct a prompt, full and complete
13   investigation of its Insured's loss; and refusing to indemnify Plaintiff with respect to the insurance
14   claim including, but not limited to, for the costs to properly repair the home to its pre-loss condition,
15   and to cover the additional living expenses incurred for the time period required to make the required
16   repairs.

17   63.    As a direct, proximate and legal result of Defendants' breaches of the Policy, Plaintiff
18   has incurred damages in an amount according to proof at trial but in excess of $109,588.

19                              **SECOND CAUSE OF ACTION**

20          *(**Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**)*

21   64.    Plaintiff incorporates herein each preceding paragraph of this Complaint.

22   65.    By virtue of the issuance of the Policy to Plaintiff, and accepting the premium,
23   Defendants were bound at all times by an obligation of good faith and fair dealing which required
24   them, *inter alia*, not to do anything to injure, frustrate or interfere with Plaintiff's rights to receive
25   the benefits of the insurance policy; treat Plaintiff with equal consideration, fairness and honesty; to
26   institute a thorough and fair investigation of the facts to determine the full extent of the covered
27   losses; to conduct a fair and unbiased evaluation of the claim; comply with California common law
28   for insurance claims; comply with statutory laws and regulatory laws concerning the handling of

COMPLAINT FOR BREACH OF CONTRACT
AND TORTIOUS BREACH OF IMPLIED COVENANT

15

1  insurance claims, including compliance with California Insurance Code § 790.03(h) and
2  California's Fair Claims Settling Practices Regulations; refrain from making unreasonably low
3  settlement offers; pay fair and reasonable amounts to repair the home with like kind and like quality
4  materials and craftsmanship to its pre-loss condition; to pay for property damage caused by the
5  subject losses; and to pay reasonable loss of use / additional living expense incurred as a result of
6  the subject covered insurance losses.

7      66.    Defendants breached the duty of good faith and fair dealing they owed to Plaintiff
8  by failing to pay all legitimate costs without any reasonable basis.

9      67.    In this case, Defendants unreasonably and maliciously breached their duties under
10  the implied covenant of good faith and fair dealing in the following respects:

11          (a)    Unreasonably and maliciously failed to attempt in good faith to reach a
12                 prompt, fair, equitable settlement of the Plaintiff's claim;

13          (b)    Unreasonably and maliciously attempted to pay an unreasonably low amount
14                 for the Plaintiff's claim;

15          (c)    Unreasonably and maliciously forced the Plaintiff to file a lawsuit to recover
16                 policy benefits;

17          (d)    Unreasonably and maliciously failed to have reasonable standards for
18                 processing Plaintiff's claim, and completely failed to properly manage the
19                 claim and repair process;

20          (e)    Unreasonably and maliciously failed to conduct a fair and unbiased
21                 evaluation of Plaintiff's claim;

22          (f)    Unreasonably and maliciously failed to conduct a thorough and fair
23                 investigation of the facts concerning the extent of the loss;

24          (g)    Unreasonably and maliciously delayed payment of covered losses;

25          (h)    Unreasonably and maliciously denied payment of covered losses;

26          (i)    Unreasonably failed to process Plaintiff's claim in a fair and reasonable
27                 manner;

28

COMPLAINT FOR BREACH OF CONTRACT
AND TORTIOUS BREACH OF IMPLIED COVENANT
16

1       (j)    Unreasonably and maliciously presented Plaintiff with repair estimates and

2             amounts that failed to restore the damaged property to its pre-loss condition;

3       (k)    Unreasonably and maliciously failed to submit repair cost estimates

4             representative of costs utilized in local market area despite knowing that the

5             residence was a high-end construction home in a high-end market, thus

6             substantially underestimating the actual cost to repair the house to pre-loss

7             condition; and

8       (l)    Allowing incompetent claims handling agents unfamiliar with California law

9             or standards of care for adjusters to dictate the claims handling process.

10     68.    Defendants' conduct as described above was intentional, willful and in reckless and

11  conscious disregard of Plaintiff's protected rights and interests.

12     69.    As a direct and legal result of Defendants' breach of the implied covenant of good

13  faith and fair dealing as alleged herein, Plaintiff suffered damages as follows:

14       (a)    General damages according to proof for emotional distress, including

15             sleeplessness, worry and anxiety due to the manner in which Defendants

16             handled the claims for benefits contractually and legally due under the Policy;

17       (b)    Special damages according to proof for litigation costs and attorneys' fees

18             incurred as a result of having been forced by Defendants to file this lawsuit

19             to obtain policy benefits and for other financial losses according to proof; and

20       (c)    Punitive damages for Defendants' malicious, fraudulent and oppressive

21             failure to deal fairly with the Insured to settle the subject claim, and for

22             maliciously, fraudulently and oppressively failing to comply with the

23             provisions of the California Insurance Code and California Fair Plan

24             Settlement Practices.

25                      **PRAYER FOR RELIEF**

26    **WHEREFORE**, Plaintiff prays for judgment as follows:

27

28

### FIRST CAUSE OF ACTION

#### (*Breach Of Contract*)

(1)    Determination and award of compensatory damages according to proof;

(2)    Determination and award of interest at the legal rate;

(3)    Costs of suit and attorneys' fees incurred herein; and

(4)    For such other further relief as this Court deems just and proper.

### SECOND CAUSE OF ACTION

#### (*Tortious Breach Of Implied Covenant of Good Faith and Fair Dealing*)

(1)    Determination and award of compensatory damages according to proof;

(2)    Determination and award of exemplary and punitive damages according to proof;

(3)    Determination and award of attorneys' fees pursuant to *Brandt v. Superior Court*, 37 Cal.3d 813 (1985);

(4)    Determination and award of interest at the legal rate;

(5)    Costs of suit and attorneys' fees incurred herein;

(6)    For such other further relief as this Court deems just and proper.

Dated: June 30, 2020

By:                               

                        Yury Kapgan

1     **DEMAND FOR JURY TRIAL**

2     Plaintiff hereby demands a trial by jury.

3 Dated: June 30, 2020

4

5             By:

6

7                      Yury Kapgan

# EXHIBIT A

# PRIVATE CLIENT



# Personal Homeowners Renewal Policy

Prepared For: Yury Kapgan

Date: 09/07/2018

Agency Name: Susman Insurance Agency

Agency Phone Number: (310) 820-5200




**Nationwide®**
is on your side

00000233-002-015-MGWNWP09090818405553-FLAT01-00-0-00000195

## PRIVATE CLIENT

09/07/2018

**Dear Yury Kapgan,**

Thank you for your continued confidence in Nationwide® Private Client and Susman Insurance Agency to service your insurance needs.

We are pleased to present you with your personalized renewal policy. We designed this policy to protect your assets and provide you peace of mind. With Nationwide Private Client, you also benefit from the stability of Nationwide, a Fortune 100 company with superior credit ratings.

When you acquire new possessions or your assets change, please advise your insurance agent so we can ensure your exposures are properly protected.

In the event of a loss, we deliver on our promise with claims service that's available 24/7, 365 days a year at 1-855-473-6410 or via email at PrivateClient@nationwide.com.

If you have any questions about your policy or if you would like to know if you qualify for any additional credits or discounts, please contact your agent.

For online or mobile access to pay your bills or view your coverage, account information or proof of insu

We appreciate the opportunity to be your carrier of choice and will continue to work hard to protect what is important to you.

Regards,

Paul VanDenBosch
President, Nationwide Private Client

nationwide.com/privateclient



Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates including Crestbrook Insurance Company, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2018 Nationwide. PVO-0113AO.3 (2/18)

**Private Client**

**Your Renewal Policy Declaration**
**Personal Home Policy**
Policy Number: HO000038782-04
Policy Period: 10/22/2018 to 10/22/2019
**Date Prepared: 09/07/2018**

**Policyholder (Named Insured)**

Yury Kapgan
143 Foxtail Dr
Santa Monica, CA 90402-2047

**Agency Name / Agency Code**

**Susman Insurance Agency / CA009101**
**11611 San Vicente Blvd Ste 515**
**Los Angeles, CA 90049-6505**
**Phone: (310) 820-5200**

**Mortgagee**

CitiMortgage, Inc. ISAOA
PO BOX 7706
Springfield, OH 45501-7706
Number:001124182314

---

**General Policy Information**

**Issued: 09/07/2018**
These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your **Policy** will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Period From 10/22/2018 To 10/22/2019** but only if the required premium for this period has been paid and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

**Residence Premises:**

**143 Foxtail Dr**
**Santa Monica, CA 90402-2047**

---

**How You saved on this Policy with Nationwide Private Client**

Protective Devices Discount
Multiple Policy Discount

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 1





Insured Copy

**Private Client**

### Your Renewal Policy Declaration
**Personal Home Policy**
Policy Number: HO00038782-04
Policy Period: 10/22/2018 to 10/22/2019

## Changes Made to Your Policy
Building Limit Changed From $1,600,634 to $1,653,455
Contents Limit Changed From $1,120,444 to $1,157,500

| Section I<br>Property Coverages | Limits Of Liability | Deductible: $2,500 All Peril |
|---|---|---|
| Coverage A – Dwelling | $1,653,455 | |
| Coverage B – Other Structures | $330,700 | |
| Coverage C – Personal Property | $1,157,500 | |
| Coverage D – Loss of Use | Actual Loss Sustained | |

| Section II<br>Liability Coverages | Limits Of Liability |
|---|---|
| Coverage E – Personal Liability | $500,000 |
| Coverage F – Medical Payments to Others | $25,000 |

## Other Coverages / Options / Endorsements Applicable

| | Coverage Limits | Premium |
|---|---|---|
| Crestbrook Protection | | $421.91 |
| Biological Deterioration Clean Up | $10,000 | Included |
| Credit Card, EFT Card, Access Device, Forgery Coverage | $10,000 | Included |
| Equipment Breakdown Enhancement | $100,000 | $0.00 |
| Extended Dwelling Replacement Cost | | Included |
| Fire Department Service Charge | $1,000 | Included |
| Loss Assessment – Sec I | $50,000 | Included |
| Ordinance or Law | | Included |
| Additional Residence Liability - Rented to Others | See Endorsement | $49.00 |
| Identity Theft or Identity Fraud Expenses | $25,000 | Included |

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 2



Insured Copy

**Private Client**

**Your Renewal Policy Declaration**
**Personal Home Policy**
Policy Number: HO00038782-04
Policy Period: 10/22/2018 to 10/22/2019

| | | |
|---|---|---|
| Loss Assessment - Sec II | $50,000 | Included |
| Workers Compensation for Domestic Employees - < 10 hrs/wk | | Included |

**Premium Summary**

| | |
|---|---|
| Policy Premium | $5,302.82 |
| Other Coverages / Options / Endorsements Premium | $470.91 |
| **Total Policy Premium:** | **$5,773.73** |

**FORMS AND ENDORSEMENTS MADE PART OF POLICY**

G8000 01/13 Privacy statement - Crestbrook
G8005H 09/16 Fair Credit Reporting Act Notice
G8016CA 02/14 California Residential Property Bill of Rights
G8017CA 02/14 California Residential Property Insurance Disclosure
G8018CA 01/17 Important Insurance Information - Consumer Complaints and Information
P1405 01/13 Homeowner Policy
P8042CA 02/14 Crestbrook Protection
P8010 01/13 Identity Theft or Identity Fraud Expenses Coverage
P8013CA 05/14 California Amendatory Endorsement
P8041 01/13 Equipment Breakdown Enhancement Endorsement
P8018 01/13 Additional Residence Rented to Others
P8001 01/09 Lender's Loss Payable Endorsement
P8050 02/14 Workers' Compensation Coverage - Residence Employees
IN2710 01/16 Important Insurance Information - Third Party Designation



Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 3



Insured Copy



00000233-004-015-MGWNWP09090818405553-FLAT01-00-0-00000195

**Private Client**

**Your Renewal Policy Declaration**
**Personal Home Policy**
Policy Number: HO00038782-04
Policy Period: 10/22/2018 to 10/22/2019

---

**Issued By:**    **Nationwide Private Client**
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A stock company wholly owned by Nationwide Mutual Insurance Company

---

**How to Contact Us**
Your Agent
24-Hours claims Reporting 855-473-6410

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 4

**Insured Copy**



**Private Client**

# PRIVACY STATEMENT

**Thank you for choosing Crestbrook**

Our privacy statement explains how we collect, use, share, and protect your personal information. So just how do we protect your privacy? In a nutshell, we respect your right to privacy and promise to treat your personal information responsibly. It's as simple as that. Here's how.

**Confidentiality and security**

We follow all data security laws. We protect your information by using physical, technical, and procedural safeguards. We limit access to your information to those who need it to do their jobs. Our business partners are legally bound to use your information for permissible purposes.

**Collecting and using your personal information**

We collect information about you when you ask about or buy one of our products or services. The information comes from your application, business transactions with us, consumer reports, and publicly available sources. Please know that we only use that information to sell, service, or market products to you.

We may collect the following types of information:

- Name, address, and Social Security number
- Assets and income
- Property address and value
- Account and policy information
- Credit reports and other consumer report information
- Family member and beneficiary information
- Public information

**Sharing your information for business purposes**

We share your information with other Nationwide companies and business partners. When you buy a product, we may share your personal information for everyday business purposes. Some examples include mailing your statements or processing transactions that you request. You cannot opt out of these. We also share your information with your agent or producer. They use your personal information to manage your policy or account. We may also share your personal information as federal and state law requires.

**Sharing your information for marketing purposes**

We don't sell your information to anyone—period. We may share your personal information with Nationwide companies or business partners to market products to you. We have joint marketing agreements with our business partners. This means that we have partnered with them to offer you a product that might interest you. They may use your personal information to market their products. If you would like to learn more about opting out, please read the next section.

**Opting Out**

You can ask us not to share your personal information with the Nationwide family of companies listed below or our business partners to market products to you. Just remember, Nationwide offers many different types of products and services. If you would like to learn about these products from one of our companies, you may not want to opt out. You can opt out of sharing with other Nationwide affiliates and sharing with third parties.



To opt out of sharing for marketing purposes, please call us toll free at 1-866-280-1809. You may opt out at any time and your request will take effect in thirty (30) days. An opt out request from one joint customer will apply to all joint customers on the policy or account. If you have already opted out, you don't need to opt out again because your request will never expire.

We will not share the personal information of Vermont customers with the Nationwide family of companies or third parties for marketing purposes without your consent.

**Using your medical information**

We sometimes collect medical information. We may use this medical information for a product or service you're interested in, to pay a claim, or to provide a service. We may share this medical information for these business purposes if required or permitted by law. But we won't use it for marketing purposes unless you give us permission.

**Accessing your information**

You can always ask us for a copy of your personal information. Please send your privacy inquiry to     the address below and have your signature notarized. This is for your protection so we may prove your identity. We don't charge a fee for giving you a copy of your information now, but we may charge a small fee in the future.

You can change your personal information at MyNationwide.com or by calling your agent. But we can't update information that other companies, like credit agencies, provide to us. So you'll need to contact these other companies to change and correct your information.

Send your privacy inquiries to the address below. Please include your name, address, and policy number. If you know it, include your agent's name and number.

Nationwide Insurance
Attn: Customer Relations—Privacy
One Nationwide Plaza, 3-04-101
Columbus, OH 43215

**A parting word...**

These are our privacy practices. They apply to all current, joint, and former clients of Nationwide Mutual Insurance Company, Nationwide Agents, and the affiliates and subsidiaries that offer auto, home, property, life insurance, banking services, and investments. This includes the following companies:

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company Nationwide General Insurance Company
Nationwide Insurance Company of America Nationwide Affinity Insurance Company of America
Nationwide Agribusiness Insurance Company Nationwide Sales Solutions, Inc.
Nationwide Insurance Company of Florida
Nationwide Lloyds
Nationwide Assurance Company Nationwide Securities, LLC Nationwide Life Insurance Company
Nationwide Bank
Nationwide Advantage Mortgage Company
Titan Holdings, Inc.
Colonial County Mutual Insurance Company
Insurance Intermediaries, Inc. Crestbrook Insurance Company

00000233-005-015-MGWNWP09090818405553-FLAT01-00-0-00000195

CRESTBROOK INSURANCE COMPANY

## CALIFORNIA RESIDENTIAL PROPERTY INSURANCE BILL OF RIGHTS

The largest single investment most consumers make is their home and related property. In order to best protect these assets, it is wise for consumers to understand the homeowner's insurance market. Consumers should consider the following:

Read your policy carefully and understand the coverage and limits provided. Homeowner's insurance policies contain sublimits for various coverages such as personal property, debris removal, additional living expense, detached fences, garages, etc.

Keep accurate records of renovations and improvements to the structure of your home, as it could affect your need to increase your coverage.

Maintaining a list of all personal property, pictures and video equipment may help in the case of a loss. The list should be stored away from your home.

Comparison shop for insurance, as not all policies are the same and coverage and prices vary.

Take time to determine the cost to rebuild or replace your property in today's market. You can seek an independent evaluation of this cost.

An agent or insurance company may help you establish policy limits that are adequate to rebuild your home.

Once the policy is in force, contact your agent or insurance company immediately if you believe your policy limits may be inadequate.

A consumer is entitled to receive information regarding homeowner's insurance. The following is a limited overview of information that your insurance company can provide:

- The California Residential Property Insurance Disclosure.
- An explanation of how your policy limits were established.
- The insurance company's customer service telephone number for underwriting, rating and claims inquiries.
- A written explanation for any cancellation or nonrenewal of your policy.
- A copy of the insurance policy.
- In the event of a claim, an itemized, written scope of loss report prepared by the insurer or its adjuster within a reasonable time period.
- In the event of a claim, notification of a consumer's rights with respect to the appraisal process for resolving claims disputes.
- In the event of a claim, a copy of the Unfair Practices Act and, if requested, a copy of the Fair Claims Practices Regulations.
- An offer of coverage and premium quote for earthquake coverage, if eligible.

A consumer is also entitled to select a licensed contractor or vendor to repair, replace or rebuild damaged property covered by the policy.



The information provided herein is not all inclusive and does not negate or preempt existing California law. If you have any concerns or questions, contact your agent, broker, insurance company or the California Department of Insurance consumer information line at 1-800-927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

00000233-006-015-MGWNWP09090818405553-FLAT01-00-0-00000195

CRESTBROOK INSURANCE COMPANY

## NOTICE TO CONSUMERS—CALIFORNIA
## RESIDENTIAL INSURANCE DISCLOSURE

This disclosure is required by Section 10102 of the California Insurance Code. This form provides general information related to residential property insurance and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and the amount payable. The information provided does not preempt existing California law.

### PRIMARY FORMS OF RESIDENTIAL DWELLING COVERAGE

> **You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed. Guaranteed Replacement Cost is the broadest level of coverage.**

☐ **ACTUAL CASH VALUE COVERAGE** pays the costs to repair the damaged dwelling minus a deduction for physical depreciation. If the dwelling is completely destroyed, this coverage pays the fair market value of the dwelling at time of loss. In either case, coverage only pays for costs up to the limits specified in your policy.

☐ **REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling, without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Coverage only pays for replacement costs up to the limits specified in your policy.

☒ **EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

☐ **GUARANTEED REPLACEMENT COST COVERAGE** covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits shown on the policy declarations page.

☒ **BUILDING CODE UPGRADE COVERAGE**, also called Ordinance and Law coverage, is an important option that covers additional costs to repair or replace a dwelling to comply with the building codes and zoning laws in effect at the time of loss or rebuilding. These costs may otherwise be excluded by your policy. Meeting current building code requirements can add significant costs to rebuilding your home. Refer to your policy or endorsement for the specific coverage provided and coverage limits that apply.

### READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY

The policy declarations page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses. The actual policy and endorsements provide the details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. The amount of any claim payment made to you will be reduced by any applicable deductibles shown on your policy declarations page. It is important to take the time to consider whether the limits and limitations of your policy meet your needs. Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.



G8017CA (02-14)

Page 1 of 3

CRESTBROOK INSURANCE COMPANY

## INFORMATION YOU SHOULD KNOW ABOUT RESIDENTIAL DWELLING INSURANCE

### AVOID BEING UNDERINSURED

Insuring your home for less than its replacement cost may result in your having to pay thousands of dollars out of your own pocket to rebuild your home if it is completely destroyed. Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.

### THE RESIDENTIAL DWELLING COVERAGE LIMIT

The coverage limit on the dwelling structure should be high enough so you can rebuild your home if it is completely destroyed. Please note:

- The cost to rebuild your home is almost always different from the market value.

- Dwelling coverage limits do not cover the value of your land.

- The estimate to rebuild your home should be based on construction costs in your area and should be adjusted to account for the features of your home. These features include but are not limited to the square footage, type of foundation, number of stories, and the quality of the materials used for items such as flooring, countertops, windows, cabinetry, lightning and plumbing.

- The cost to rebuild your home should be adjusted each year to account for inflation.

- Coverage limits for contents, separate structures, additional living expenses and debris removal are usually based on a percentage of the limit for the dwelling. If your dwelling limit is too low, these coverage limits may also be too low.

You are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company or an independent appraisal from a local contractor, architect, or real estate appraiser. If you do obtain an estimate of replacement value, and wish to change your policy limits, contact your insurance company. While not a guarantee, a current estimate can help protect you against being underinsured.

### DEMAND SURGE

After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor. This effect is known as demand surge. Demand surge can increase the cost of rebuilding your home. Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

### CHANGES TO PROPERTY

Changes to your property may increase its replacement cost. These changes may include the building of additions, customizing your kitchen or bathrooms, or otherwise remodeling your home. Failure to advise your insurance company of any significant changes to your property may result in your home being underinsured.

### EXCLUSIONS

Not all causes of damage are covered by common homeowners or residential fire policies. You need to read your policy to see what causes of loss or perils are not covered. Coverage for landslide is typically excluded. Some excluded perils such as earthquake or flood can be purchased as an endorsement to your policy or as a separate policy. Contact your agent, broker, or insurance company if you have a concern about any of the exclusions in your policy.

CRESTBROOK INSURANCE COMPANY

**CONTENTS (PERSONAL PROPERTY) COVERAGE DISCLOSURE**

This disclosure form does not explain the types of contents coverage provided by your policy for items such as your furniture or clothing. Contents may be covered on either an actual cash value or replacement cost basis depending on the contract. Almost all policies include specific dollar limitations on certain property that is particularly valuable, such as jewelry, art, or silverware. Contact your agent, broker or insurance company if you have any questions about your contents coverage. You should create a list of all personal property in and around your home. Pictures and video recordings also help you document your property. The list, photos, and video should be stored away from your home.

**CONSUMER ASSISTANCE**

If you have any concerns or questions, contact your agent, broker, or insurance company. You are also encourages to contact the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

Signature required only at inception of policy.

Policy No.: _____   Effective Date: _____
                                         12:01 A.M. Standard Time

_____   _____
Named Insured              Insured's Name (printed)

_____   _____
Insured's Signature        Date



CRESTBROOK INSURANCE COMPANY                                    PERSONAL HOME POLICY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CRESTBROOK PROTECTION

For an additional premium the following coverages apply.

1. The following is added to the definition of **Insured**:

   Trusts or other entities owned by an **Insured** with a financial interest in the **Residence Premises** are protected under Coverage A—**Dwelling** and Coverage B—**Other Structures**. Coverage also applies under Coverage E—**Personal Liability** for liability from the ownership, maintenance, or use of the **Residence Premises**. This provision does not increase the amount of insurance.

   This coverage does not apply to:

   a. an **employee**;

   b. a **Residence Employee**; or

   c. a temporary employee that substitutes for a permanent **Residence Employee** on leave or used to meet seasonal or short term workload conditions.

Section I—**Property Coverages** is amended as follows:

2. Under Coverage C—**Personal Property, Special Limits of Liability**, the following apply;

   a. Item 1. limit is increased to $25,000.

   b. Item 3. is eliminated in its entirety.

   c. Item 4. Is eliminated in its entirety.

   d. Item 5. limit is increased to $5,000.

   e. Item 12. limit is increased to $100,000.

3. Under Coverage D—**Loss of Use, Additional Living Expense** is replaced with the following:

   **Additional Living Expense.** If a covered loss requires **you** to leave the **Residence Premises, we** will pay the reasonable increase in living expenses **you** incur to maintain **your** normal standard of living. **We** cover this increase for the reasonable amount of time required to restore **your** Dwelling or other permanent structure to a habitable condition, or if **you** or members of **your** household permanently relocate, the shortest amount of time required to settle elsewhere. However, if **you** are newly constructing **your** Dwelling or other permanent structure or constructing additions, alterations, or renovations to **your** Dwelling or other permanent structure at the time of a covered loss, **we** only cover the increase in **your** normal living expenses incurred by **you** for the reasonable amount of time required to restore the Dwelling or other permanent structure to the condition it was in prior to the covered loss. This period of time is not limited by the expiration of this policy.

4. **Additional Property Coverages** is amended as follows:

   Paragraph 1.b. of **Debris Removal** is replaced with the following:

   b. **We** will pay the reasonable expenses to remove debris of a covered loss from the property. **We** will also pay up to a total of $5,000 from the **Residence Premises** to remove trees from the **Residence Premises** if felled by the peril of windstorm, hail, weight of ice or snow or sleet when there is no damage to covered property.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010



P8042 CA (02-14)                              Page 1 of 5

Paragraph 3. **Trees, Shrubs, Plants and Lawns** is replaced with the following:

3. **Trees, Shrubs, Plants and Lawns. We** will pay up to five percent (5%) of the coverage limit for Coverage A—**Dwelling** but no more than $10,000 for any one tree, shrub, or plant. Landscaping does not include forestry or brush.

   **We** will only pay for losses caused by:

   a. aircraft;

   b. fire, lightning or explosion;

   c. riot or civil commotion;

   d. a vehicle not owned or operated by someone who lives at the **Residence Premises;** or

   e. theft, attempted theft, vandalism or malicious mischief.

   This coverage applies only if **you** restore the damaged landscaping within one hundred eighty (180) days of the loss.

   **We** do not cover property that is grown for **Business** purposes or property that is part of, or a continuation of, a forest including national forest or wildlife preserve.

   This coverage is additional insurance.

Paragraph 13. **Lock Replacement** is replaced with the following:

13. **Lock Replacement. We** will pay the reasonable expense to replace or rekey the exterior door locks on **your Residence Premises**. This coverage applies only if the keys to **your Residence Premises** are stolen. **You** must notify **us** within seventy-two (72) hours of discovering the keys have been stolen. No deductible applies to this coverage.

Paragraph 14. **Ordinance or Law** is amended as follows:

   The following sentence is deleted:

   This is additional coverage.

   The following sentence is deleted:

   The most we will pay for this coverage is one hundred percent (100%) of the Coverage A— **Dwelling** limit of liability shown on the Declarations.

   The following sentence is added:

   For losses as a result of wildfire or fire resulting from an earthquake, the most **we** will pay is two hundred percent (200%) of the Coverage A—**Dwelling** limit of liability shown in the Declarations. No coverage applies if the Difference in Conditions endorsement is shown on the Declarations. Earthquake includes land shock waves or tremors before, during or after a volcanic eruption. One or more earthquake shocks that occur within a seventy-two (72) hour period constitute a single earthquake.

   All other provisions of the **Ordinance or Law** coverage section are unchanged and apply.

Paragraph 15. **Data Restoration** is replaced with the following:

15. **Data Restoration. We** will pay up to a total of $25,000 for expenses incurred by **you** to replace or recreate **your** lost personal data stored on a personal computer or portable computing devices that **you** own or lease. Lost personal data must be the result of a covered loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

Paragraph 19. **Damaged Caused by Domestic Animals** is replaced by the following:

19.  **Damaged Caused by Domestic Animals. We** cover direct physical loss to covered property when such loss is caused by a domestic animal. The maximum **we** will pay for this coverage is $25,000.

5.  The following are added to **Additional Property Coverages:**

**Water Shut-Off Device Coverage.** After **your** first covered water damage loss by this policy, **we** will pay for reasonable costs **you** incur up to $5,000 for the installation of an approved water shut-off device. This payment will not increase the amount of coverage. This additional coverage only applies if the loss exceeds the location deductible.

**Kidnap and Ransom Expense Coverage.**

**We** will pay up to $25,000 to reimburse any of the following expenses related to a **Kidnapping** of an **Insured:**

a.  attorney fees to negotiate a settlement;

b.  lost income of the kidnapped **Insured;**

c.  travel;

d.  lodging costs; and

e.  telephone costs.

No coverage applies to ransom payments caused by or in any way related to the **kidnapping** of an **Insured.**

**Kidnapping** is defined as the crime of unlawfully seizing and carrying away a person by force or fraud, or seizing and detaining a person against his or her will with intent to carry away at a later time.

**Pet Injury Coverage.** If **your** pet is injured as a result of a covered loss, **we** will pay up to $5,000 for the medical expenses for the resulting injuries. Coverage applies only to expenses for those injuries resulting directly from the covered cause of loss. This limit is the maximum **we** will pay for a covered loss regardless of the number of pets injured.

**Disability Alterations Coverage.** If **you** or an **Insured** residing in **your** household is permanently disabled by an accidental injury, **we** will pay to update the **Residence Premises** to meet minimum standards for the disability. **We** will pay up to five percent (5%) of the Coverage A—**Dwelling** limit of liability stated on the Declarations up to a maximum of $50,000.

**Realty Tax Increased Assessment Coverage. We** will pay up to $25,000 for any additional county tax assessments if the assessment is increased following a covered total loss and such loss was the cause of the tax increase. This coverage only applies to the first assessment generated after **your** home has been reconstructed.

Section I—**Property Conditions** is amended as follows:

6.  Paragraphs 4.b. of **Loss Settlement** are deleted and replaced with the following:

b.  Covered losses to **your** property under Coverage A—**Dwelling** and Coverage B—**Other Structures** will be settled as follows:

**We** will pay the cost of repair or replacement, without deduction for depreciation and without regard to the limit of liability shown on the Declarations.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010



However, in the event of a covered loss to the Dwelling that occurs during construction of additions or renovations we will pay no more than **Actual Cash Value:**

(1) if the construction or renovation increases the replacement cost of the Dwelling or Other Structure more than five percent (5%) or $500,000, whichever is less; or

(2) at the time of loss **you** have not occupied the Dwelling for more than thirty (30) consecutive days due to construction or renovation;

This limitation does not apply if, prior to a loss, **you** have notified **us** of such construction or renovation and **we** have provided **you** with **our** written consent.

For losses as a result of wildfire or fire resulting from an earthquake, the most **we** will pay is two hundred percent (200%) of the Coverage A—**Dwelling** limit of liability shown in the Declarations. No coverage applies if the Difference in Conditions endorsement is shown on the Declarations. Earthquake includes land shock waves or tremors before, during or after a volcanic eruption. One or more earthquake shocks that occur within a seventy-two (72) hour period constitute a single earthquake.

**You** agree to:

(1) Insure **your** Dwelling and Other Structures to at least one hundred percent (100%) of its replacement cost as determined by **our** replacement cost estimation or an inspection performed by a recognized appraisal agency authorized by **us**;

(2) Repair or replace the Dwelling and Other Structures with materials of like kind and quality on the **Residence Premises**; or, for no greater cost, buy or build a Dwelling at another location. If **you** choose not to repair or replace, **we** will only pay **you** the cost to repair or rebuild the damaged Dwelling at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less.

(3) Promptly notify **us** of a renovation that increases the replacement cost of the Dwelling or Other Structure more than five percent (5%) or $500,000, whichever is less;

(4) Notify us prior to the start of a **renovation** which will cause **your** Dwelling to be:

    i.   vacant; or

    ii.   not occupied by **you** for more than thirty (30) consecutive days;

(5) Accept annual adjustments due to **Inflation Protection Coverage**; and

(6) Pay any additional premium.

If a change in the amount of coverage for your Dwelling is made, the limit applying to Coverage C—**Personal Property** will be adjusted proportionately.

7. Paragraph 4.c. of **Loss Settlement** is deleted in its entirety.

8. Paragraph 2. **Deductible** of Section I—**Property Conditions** is replaced with the following:

2. **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy, applicable to a covered loss, is the amount of loss paid by the **Insured.** Different deductible amounts may apply to different causes of loss. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property. **We** pay for covered loss above the applicable deductible amount.

The deductible will not apply to a covered loss of more than $50,000. This waiver of deductible does not apply to:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

    a.   special deductibles for wind, hurricane, hail, or earth movement including earthquake; or

    b.   separate coverage deductibles contained within policy provisions or shown on the Declarations.

9.   Coverage F—Medical Payments to Others

When Section II—Personal Liability is purchased for this policy from us, the limit of liability is increased to $25,000.

10.   The following is added to General Policy Conditions:

**Family Safety**

We will pay up to $25,000 for counseling services to help an Insured after a covered loss or occurrence. This coverage will also apply for an Insured if a victim of a stalking, home invasion or abduction. Payment will be excess of any such services provided by your medical insurance and the provider of the services will need to be approved by us prior to use. Coverage will apply for a period of up to one year from the date of covered loss or occurrence.



**All other provisions of this policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT

As respects this Equipment Breakdown Enhancement Endorsement, this endorsement changes coverage provided by this policy. Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

"Equipment Breakdown" coverage is subject to a $100,000 per Occurrence Limit of Liability.
"Equipment Breakdown" coverage is subject to a $500 per Occurrence Deductible.

### DEFINITIONS

The following **Definitions** are added as they relate to coverage under this endorsement:

1. "Equipment Breakdown."

   "Equipment Breakdown" as used herein means:

   **a.** Physical loss or damage both originating within:

   **(1)** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

   **(a.)** waste disposal piping;

   **(b.)** any piping forming part of a fire protective system; and

   **(c.)** any water piping other than:

   **1)** boiler feed water piping between the feed pump and the boiler;

   **2)** boiler condensate return piping; or

   **3)** water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes

   **(2)** All mechanical, electrical, electronic or fiber optic equipment; and

   **b.** Caused by, resulting from, or consisting of:

   **(1)** Mechanical breakdown;

   **(2)** Electrical or electronic breakdown; or

   **(3)** Rupture, bursting, bulging, implosion, or steam explosion. However,

   "Equipment Breakdown" will not mean:

   Physical loss or damage caused by or resulting from any of the following; however if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

   **(1)** All losses excluded in the underlying policy; and

   **(2)** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

   Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement and flood.

2. "Green" as used means products, materials, methods and processes certified by a "Green Authority" that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

3. "Green Authority" as used means an authority on "Green" buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED ), "Green" Building Initiative Green Globes, Energy Starr Rating System or any other recognized "Green" rating system.

3. "Motor Vehicle" as used herein means any self propelled land or amphibious vehicle.



00000233-012-015-MGWNWP09090818405553-FLAT01-00-0-00000185

CRESTBROOK INSURANCE COMPANY

**SECTION I - Property Coverages**

The following **Coverage Agreements** are deleted and replaced with the following:

**We** cover all risk of accidental direct physical loss to property described in Coverages A, B and C below, including "equipment breakdown", except for losses excluded under Section I – Property Exclusions.


**SECTION I - Additional Property Coverages**

The following **Additional Property Coverages** are added as they relate to coverage under this endorsement:.

**1. Expediting Expense**

When an "equipment breakdown" results in damage to covered property, "we" pay the reasonable cost to:

a.    make temporary repairs;

b.    expedite permanent repairs; and

c.    expedite permanent replacement

Reasonable extra cost means the extra cost of temporary repair and of expediting the repair of "your" damaged property including overtime and the extra cost of express or other rapid means of transportation.

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage

**2. Refrigerated Property**

"We" pay for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by an "equipment breakdown" to personal property covered by this policy.

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.

**3. Pollutant Clean Up and Removal**

"We" pay for pollutant clean up and removal for loss resulting from an "equipment breakdown."

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.

**4. Off-Premises Coverage**

We will pay for loss or damage to covered property resulting from a covered "Equipment Breakdown" while temporarily at a premises or location that is not a "residence premises". This coverage does not apply to any "Motor Vehicle".

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.


**SECTION I – Property Exclusions**

The following **Property Exclusions** are deleted and replaced with the following:

In the Personal Home Policy P1405:

**z. (2)** Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

In the Personal Condo Policy P1406, this replaces item **y.(2).**

00000233-012-015-MGWNWP09090818405553-FLAT01-00-0-00000195

CRESTBROOK INSURANCE COMPANY

## SECTION I – CONDITIONS

The following **Conditions** are deleted and replaced with the following:

### 4. Loss Settlement

    **a.** We will pay you the amount you spend to repair or replace your Covered Property damaged by an "Equipment Breakdown". Our payment will be the lesser of:

        **(1)** The cost at the time of the "Equipment Breakdown" to repair the damaged Covered Property;

        **(2)** The cost at the time of the "Equipment Breakdown" to replace the Covered Property with property of like kind, capacity, size and quality; or

        **(3)** The amount you actually spend that is necessary to repair or replace the damaged property.

    **b.** As respects your Covered Property, if the cost of repairing or replacing only a part of the Covered Property is greater than:

        **(1)** The cost of repairing the Covered Property; or

        **(2)** The cost of replacing the entire Covered Property on the same site,

    We will pay the lesser amount.

    The repair parts or replacement Covered Property must be:

        **(1)** Of like kind, capacity, size and quality; and

        **(2)** Used for the same purpose.

### 16. "Equipment Breakdown" coverage does not extend beyond the "Residence Premises" except as provided by the Off Premises Coverage under Additional Coverages.

### 17. Green Environmental, Safety, and Efficiency Improvements

    If Covered Property requires repair or replacement due to an "Equipment Breakdown", we will pay;

    **a.** The "your" additional cost to repair or replace that property with equipment that is better for the environment, safer, or more efficient than the equipment being repaired or replaced.

    **b.** The additional reasonable and necessary fees incurred by the Insured for an accredited professional certified by a "Green Authority" to participate in the repair or replacement of physically damaged Covered Property as "Green".

    **c.** The additional reasonable and necessary cost incurred by the Insured for certification or recertification of the repaired or replaced Covered Property as "Green".

    **d.** The additional reasonable and necessary cost incurred by the Insured for "Green" in the removal, disposal or recycling of damaged Covered Property.

    **e.** The Loss of Use (if covered within the Policy to which this Equipment Breakdown Enhancement Endorsement – Green Environmental and Efficiency Improvements is attached) loss during the additional time required for repair or replacement of Covered Property, consistent with "Green", in the coverages above.



However, "we" will not pay more than 150% of what the cost would have been to repair or replace such property with like kind and quality inclusive of fees, costs, and any loss of use loss incurred as stated above.

These **Conditions** will be part of, and not an addition to, the limit of liability per loss or any other sublimits of this Policy.

00000233-013-015-MGWNWP09090818405553-FLAT01-00-0-00000195

CRESTBROOK INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL RESIDENCE RENTED TO OTHERS
## 1, 2, 3, OR 4 FAMILIES

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

### SCHEDULE

| Definition 5. Which defines an Insured Location and the exception to Section II Exclusion E.2. Business in Paragraph b. are extended to include the location(s) listed below: | |
|---|---|
| **Location** | **Number Of Families** |
| 1.   928 19th St Unit 106, Santa Monica, CA 90403-3362 | 1 |

All other provisions of this policy apply.



·Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1999

00000233-014-015-MGWNWP09090818405553-FLAT01-00-0-00000185

IN 2710 (01-16)

**\*\*\*\*\*\*\***       **IMPORTANT INSURANCE INFORMATION**       **\*\*\*\*\*\*\***

**THIRD PARTY DESIGNATION**

Thank you for choosing us to help you protect what s important to you.

California law allows you the right to designate an individual to receive a notice of lapse, termination, expiration, nonrenewal, or cancellation of your policy for nonpayment of premium. An individual designated by you to receive a notice of lapse, termination, expiration, nonrenewal, or cancellation of your policy for nonpayment of premium does not have any rights, whether as an additional insured or otherwise, to any benefits under the policy, other than to receive such notice.

If you have designated an individual to receive such notice, the individual and their address is displayed below.

**What you need to do**
If you wish to add, change or delete a designated person to receive such notice, please contact your agent or member care representative. Contact information can be found on your policy declarations page or cover letter.

**For help when you need it**
Your agent or member care representative can answer any questions you have about this notice or other additional coverage options available to you. We appreciate your business and look forward to continuing to serve you.



00000233-015-015-MGWNWP09090818405553-FLAT01-00-0-00000195

# EXHIBIT B



Private Client

# Personal Homeowners Policy

Prepared For: Yury Kapgan

Date: 10/21/2015

Agency Name: Susman Insurance Agency

Agency Phone Number: (310) 820-5200



10/21/2015

Dear Yury Kapgan,

Thank you for placing your confidence in Nationwide® Private Client and Susman Insurance Agency.  At Nationwide Private Client, we specialize in protecting our affluent clients, including your family's assets and reputation. In partnership with your agency, we have customized your policy to offer you comprehensive protection that fits your unique coverage needs.

With a Nationwide Private Client policy, you will also experience the peace of mind that comes from working with one of the largest and most established insurance and financial companies in the world.  With Nationwide's A1 rating from Moody's and A+ ratings from A.M. Best and S&P, you can count on our financial strength and stability as a Fortune 100 company.  You have our commitment to deliver on our promises.

In the event of a loss, our claims service is available  24 hours a day, 365 days a year at (855) 473-6410 or via email PrivateClient@nationwide.com.

We appreciate the opportunity to be your insurance carrier of choice and look forward to a long-lasting relationship.

Regards,

Jim Pedersen
President, Nationwide Private Client

Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide. PVO-0113AO (04/15)

**Nationwide**
is on your side

**Private Client**

## Your New Business Policy Declaration
**Personal Home Policy**
Policy Number: HO00038782-01
Policy Period: 10/22/2015 to 10/22/2016
**Date Prepared: 10/21/2015**

**Policyholder (Named Insured)**

**Yury Kapgan**
**143 Foxtail Dr**
**Santa Monica, CA 90402-2047**

**Agency Name / Agency Code**

**Susman Insurance Agency / CA009101**
**11611 San Vicente Blvd Ste 650**
**Los Angeles, CA 90049-5106**
**Phone: (310) 820-5200**

**Mortgagee**

**CitiMortgage, Inc.  ISAOA**
**PO BOX 7706**
**Springfield, OH 45501-7706**
**Number:001124182314**

---

**General Policy Information**

**Issued: 10/21/2015**
These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your **Policy** will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Period From 10/22/2015 To 10/22/2016** but only if the required premium for this period has been paid and only for annual renewal periods if premiums are paid as required.  Each period  begins and ends at 12:01 A.M. standard time at the Residence Premises.

**Residence Premises:**

**143 Foxtail Dr**
**Santa Monica, CA 90402-2047**

---

**How You saved on this Policy with Nationwide Private Client**

Protective Devices Discount
Multiple Policy Discount

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 1



Agent Copy

**Private Client**

**Your New Business Policy Declaration**
**Personal Home Policy**
Policy Number: HO00038782-01
Policy Period: 10/22/2015 to 10/22/2016

| Section I Property Coverages | Limits Of Liability | Deductible: $2,500 All Peril |
|---|---|---|
| Coverage A - Dwelling | $1,500,000 | |
| Coverage B - Other Structures | $300,000 | |
| Coverage C - Personal Property | $1,050,000 | |
| Coverage D - Loss of Use | Actual Loss Sustained | |

| Section II Liability Coverages | Limits Of Liability |
|---|---|
| Coverage E - Personal Liability | $500,000 |
| Coverage F - Medical Payments to Others | $25,000 |

**Other Coverages / Options / Endorsements Applicable**

| | Coverage Limits | Premium |
|---|---|---|
| Crestbrook Protection | | $258.34 |
| Biological Deterioration Clean Up | $10,000 | Included |
| Credit Card, EFT Card, Access Device, Forgery Coverage | $10,000 | Included |
| Equipment Breakdown Enhancement | $100,000 | Included |
| Extended Dwelling Replacement Cost | | Included |
| Fire Department Service Charge | $1,000 | Included |
| Loss Assessment - Sec I | $50,000 | Included |
| Ordinance or Law | | Included |
| Identity Theft or Identity Fraud Expenses | $25,000 | Included |
| Loss Assessment - Sec II | $50,000 | Included |
| Workers Compensation for Domestic Employees - < 10 hrs/wk | | Included |

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 2



Agent Copy

**Private Client**

### Your New Business Policy Declaration
**Personal Home Policy**
Policy Number: HO00038782-01
Policy Period: 10/22/2015 to 10/22/2016

## Premium Summary

| | |
|---|---|
| Policy Premium | $3,229.25 |
| Other Coverages / Options / Endorsements Premium | $258.34 |
| **Total Policy Premium:** | **$3,487.59** |

## FORMS AND ENDORSEMENTS MADE PART OF POLICY

G8000 01/13 Privacy statement – Crestbrook
G8016CA 02/14 California Residential Property Bill of Rights
G8017CA 02/14 California Residential Property Insurance Disclosure
G8018CA 02/14 Important Information for California Policyholders
G8020CA 02/14 California Insurance Guarantee Association Notice
G8021CA 02/14 Important Insurance Information - Summary of Rights
P1405 01/13 Homeowner Policy
G8001 01/13 Signature Page
P8042CA 02/14 Crestbrook Protection
P8010 01/13 Identity Theft or Identity Fraud Expenses Coverage
P8013CA 05/14 California Amendatory Endorsement
P8041 01/13 Equipment Breakdown Enhancement Endorsement
P8050 02/14 Workers' Compensation Coverage - Residence Employees
G8061CA 01/15 Community Service Statement

**Issued By:** **Nationwide Private Client**
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A stock company wholly owned by Nationwide Mutual Insurance Company

## How to Contact Us
Your Agent
24-Hours claims Reporting 855-473-6410

Underwritten by Crestbrook Insurance Company

P1501 (01-13)
Page 3



Agent Copy

**Private Client** | IDENTITY THEFT ASSISTANCE

As a Nationwide Private Client policyholder, you are eligible for the 24/7 benefits of Identity Theft Assistance through Europ Assistance USA.

ID Theft Assist℠ services:



- Contact major credit bureaus to place fraud alerts on your account

- Assistance in replacing identification documents if stolen

- Ongoing monitoring and alert of fraudulent activity

- Access to the Online Data Protection Suite software

Contact us for 24/7 assistance or to report a claim, toll-free at (855) 473-6410 in U.S. or Canada. For international calls please contact 001-317-324-0627.

**Nationwide®**

IMPORTANT INFORMATION — KEEP IN A SAFE PLACE

If you are traveling for an extended period of time, you may consider noting the following information and taking this card with you in case you need to access your Identity Theft Assistance benefits.

Be certain to keep it in a safe place:

Policyholder name: _____

Policy number: _____

Agent name: _____

Agent phone number: _____

Agent email: _____

In case of emergency, contact:

_____

_____

www.worldwideassistance.com

nationwide.com/privateclient



Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide. PVR-0073A0 (04/15)

## Private Client | TRAVEL ASSIST™ PROTECTION

**IMPORTANT INFORMATION — KEEP IN A SAFE PLACE**

As a Nationwide Private Client policyholder, you are eligible for the 24/7 benefits of Emergency Travel Assistance through Europ Assistance USA.



When you travel more than 100 miles from home on trips of 90 days or less, Travel Assist™ provides emergency medical, financial and pre-trip support, including locating local physicians, dentist and medical facilities, replacement of medication and eyeglasses, and emergency travel arrangements.

If you need assistance while traveling, call us:
Within the US and Canada, toll-free 855-473-6410
or internationally dial 001-317-324-0627

Follow this series of prompts:
    Press 1  for Policyholder
    Press 1  for Claims, Roadside and Travel Assistance
    Press 3  for Travel Assistance
A Travel Assist representative will help you with your inquiry.

Before you go, please visit www.worldwideassistance.com to review helpful information about international travel.

With Nationwide Private Client products and services, you can rest assured you will get the support you need while traveling without having to purchase a separate policy.

If you are traveling for an extended period of time, you may consider noting the following information and taking this card with you in case you need to access your Travel Assistance benefits. Be certain to keep it in a safe place:

Policyholder name: _____

Policy number: _____

Agent name: _____

Agent phone number: _____

Agent email: _____

In case of emergency, contact:

_____

_____

Medical insurance carrier: _____

Medical insurance policy/group: _____

nationwide.com/privateclient

**Nationwide®**

Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide. PVR-0172AO (04/15)

CRESTBROOK INSURANCE COMPANY

# NOTICE TO CONSUMERS—CALIFORNIA
# RESIDENTIAL INSURANCE DISCLOSURE

This disclosure is required by Section 10102 of the California Insurance Code. This form provides general information related to residential property insurance and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and the amount payable. The information provided does not preempt existing California law.

### PRIMARY FORMS OF RESIDENTIAL DWELLING COVERAGE

> **You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed. Guaranteed Replacement Cost is the broadest level of coverage.**

☐ **ACTUAL CASH VALUE COVERAGE** pays the costs to repair the damaged dwelling minus a deduction for physical depreciation. If the dwelling is completely destroyed, this coverage pays the fair market value of the dwelling at time of loss. In either case, coverage only pays for costs up to the limits specified in your policy.

☐ **REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling, without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Coverage only pays for replacement costs up to the limits specified in your policy.

☒ **EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

☐ **GUARANTEED REPLACEMENT COST COVERAGE** covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits shown on the policy declarations page.

☒ **BUILDING CODE UPGRADE COVERAGE**, also called Ordinance and Law coverage, is an important option that covers additional costs to repair or replace a dwelling to comply with the building codes and zoning laws in effect at the time of loss or rebuilding. These costs may otherwise be excluded by your policy. Meeting current building code requirements can add significant costs to rebuilding your home. Refer to your policy or endorsement for the specific coverage provided and coverage limits that apply.

### READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY

The policy declarations page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses. The actual policy and endorsements provide the details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. The amount of any claim payment made to you will be reduced by any applicable deductibles shown on your policy declarations page. It is important to take the time to consider whether the limits and limitations of your policy meet your needs. Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.

CRESTBROOK INSURANCE COMPANY

## INFORMATION YOU SHOULD KNOW ABOUT RESIDENTIAL DWELLING INSURANCE

### AVOID BEING UNDERINSURED

Insuring your home for less than its replacement cost may result in your having to pay thousands of dollars out of your own pocket to rebuild your home if it is completely destroyed. Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.

### THE RESIDENTIAL DWELLING COVERAGE LIMIT

The coverage limit on the dwelling structure should be high enough so you can rebuild your home if it is completely destroyed. Please note:

- The cost to rebuild your home is almost always different from the market value.

- Dwelling coverage limits do not cover the value of your land.

- The estimate to rebuild your home should be based on construction costs in your area and should be adjusted to account for the features of your home. These features include but are not limited to the square footage, type of foundation, number of stories, and the quality of the materials used for items such as flooring, countertops, windows, cabinetry, lightning and plumbing.

- The cost to rebuild your home should be adjusted each year to account for inflation.

- Coverage limits for contents, separate structures, additional living expenses and debris removal are usually based on a percentage of the limit for the dwelling. If your dwelling limit is too low, these coverage limits may also be too low.

You are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company or an independent appraisal from a local contractor, architect, or real estate appraiser. If you do obtain an estimate of replacement value, and wish to change your policy limits, contact your insurance company. While not a guarantee, a current estimate can help protect you against being underinsured.

### DEMAND SURGE

After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor. This effect is known as demand surge. Demand surge can increase the cost of rebuilding your home. Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

### CHANGES TO PROPERTY

Changes to your property may increase its replacement cost. These changes may include the building of additions, customizing your kitchen or bathrooms, or otherwise remodeling your home. Failure to advise your insurance company of any significant changes to your property may result in your home being underinsured.

### EXCLUSIONS

Not all causes of damage are covered by common homeowners or residential fire policies. You need to read your policy to see what causes of loss or perils are not covered. Coverage for landslide is typically excluded. Some excluded perils such as earthquake or flood can be purchased as an endorsement to your policy or as a separate policy. Contact your agent, broker, or insurance company if you have a concern about any of the exclusions in your policy.

CRESTBROOK INSURANCE COMPANY

### CONTENTS (PERSONAL PROPERTY) COVERAGE DISCLOSURE

This disclosure form does not explain the types of contents coverage provided by your policy for items such as your furniture or clothing. Contents may be covered on either an actual cash value or replacement cost basis depending on the contract. Almost all policies include specific dollar limitations on certain property that is particularly valuable, such as jewelry, art, or silverware. Contact your agent, broker or insurance company if you have any questions about your contents coverage. You should create a list of all personal property in and around your home. Pictures and video recordings also help you document your property. The list, photos, and video should be stored away from your home.

### CONSUMER ASSISTANCE

If you have any concerns or questions, contact your agent, broker, or insurance company. You are also encourages to contact the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

Signature required only at inception of policy.

Policy No.: _____     Effective Date: _____

12:01 A.M. Standard Time

_____              _____

Named Insured                                   Insured's Name (printed)

_____              _____

Insured's Signature                             Date

CRESTBROOK INSURANCE COMPANY

## IMPORTANT INFORMATION FOR CALIFORNIA POLICYHOLDERS

In the event you need to contact someone about this policy for any reason, please contact your agent first. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

**Crestbrook Insurance Company
8877 North Gainey Center Drive
Scottsdale, Arizona 85258
Telephone: 1-855-423-7675**

If you have been unable to contact or obtain satisfaction from the company or agent, you may contact the California Insurance Department at:

**California Department of Insurance
Consumer Affairs Unit
300 South Spring Street, 9th Floor, South Tower
Los Angeles, California 90013
Telephone: 1-800-927-4357 or 213-897-8921 (out of state)**

When contacting your agent, company or the Insurance Department, please have your policy number available.

Private Client

# *PERSONAL HOME POLICY*

Underwritten by Crestbrook Insurance Company
Home Office: One Nationwide Plaza | Columbus, Ohio 43125
Administrative Office: 8877 North Gainey Center Drive | Scottsdale, Arizona 85258
A stock company wholly owned by Nationwide Mutual Insurance Company



CRESTBROOK INSURANCE COMPANY

## *Insuring Agreement*

**We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages **you** have chosen are shown on the Declarations. **We** may change the amount of coverage shown on the Declarations Page to reflect current costs and values when reconstruction cost estimates are conducted or when the policy renews. This policy applies only to loss which occurs during the policy period.

**You** agree, by accepting this policy, to advise **us** of any:
1. addition to;
2. alteration of; or
3. renovation of;

the Coverage A—Dwelling or a Coverage B—Other Structure covered under this policy. **You** agree to advise **us** or **our** agent at the start of construction and accept adjustments in coverage limits to properly reflect any increase in **Replacement Cost** of the dwelling or other structure. **We** may change the amount of coverage shown on the Declarations Page to reflect current costs and values when reconstruction cost estimations are conducted or the policy renews.

## *Definitions*

Certain words and phrases used in this policy are defined as follows:
1. **"We," "Us"** and **"Our"** refer to the company shown on the Declarations as the issuing company.

2. **"You"** and **"Your"** refer to the named **Insured** shown in this policy who resides at the **Residence Premises.** These terms also mean **your** spouse who resides in the same household.

3. **"Business"** includes:
   a. Trade, profession, occupation, or employment including self-employment performed on a full-time, part-time, or temporary basis; or
   b. Other activities performed for monetary or other compensation, except the following:
      (1) Volunteer activities for which no monetary or other compensation is received other than reimbursement for expenses incurred to perform the activity.
      (2) Providing home day care services for:
         (a) which no monetary or other compensation is received. A mutual exchange of home care services is not considered compensation; or
         (b) a relative of an **Insured.**

4. "**Insured**" means:
   a. **You** and residents of **your** household who are:
      (1) **Your** relatives.
      (2) Other persons under the age 21 and in the care of **you** or **your** relatives.
      (3) A civil partner by Civil Union or Registered Domestic Partnership filed and recognized by the state.
      (4) A domestic partner living with **you** who is at least 18 years of age and sharing a common domestic life whose relationship resembles a mutually exclusive partnership such as that of a marriage; and
         (a) is financially interdependent with **you** and with whom **you** are jointly responsible for each other's common welfare.
         (b) is not a relative; and
         (c) has not been in a different domestic partner relationship within the last 6 months and is in the current domestic partner relationship for at least 6 consecutive months.

      A domestic partner does not include more than one person, a roommate or housemate whether sharing expenses equally or not, or one who pays rent to the **insured.**
   b. A student enrolled in school full-time, as defined by the school, who was a resident of **your** household before moving out to attend school, provided the student is under the age of:
      (1) Twenty-six (26) and **your** relative; or
      (2) Twenty-one (21) and in **your** care or the care of **your** relative; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

   c.  Under Section II, **Insured** also means:

      (1)  With respect to animals or **Watercraft** to which this policy applies, any person or organization legally responsible for these animals or **Watercraft** which are owned by **you** or any person included in 4.a. or 4.b. above. **Insured** does not mean a person or organization using or having custody of these animals or **Watercraft** in the course of any **Business** or without consent of the owner; or

      (2)  With respect to a **Motor Vehicle** to which this policy applies:

         (a)  Persons while engaged in **your** employ or that of any person included in 4.a. or 4.b. above; or

         (b)  Other persons using the vehicle on an **Insured Location** with **your** consent.

As used throughout the policy and attached endorsements, the word "an" immediately preceding the word "**Insured**", the words "an **Insured**" together mean one or more **Insureds**.

5.  "**Insured Location**" means:
  a.  the Residence Premises.
  b.  the part of any other premises, structures, and grounds used by **you** as a residence and shown on the Declarations; also any of these acquired by **you** during the policy period for **your** use as a residence.
  c.  a premises **you** use with premises defined in 5.a. or 5.b.
  d.  a part of a premises, not owned by an **Insured**, where an **Insured** is temporarily living.
  e.  vacant land, other than farm land, owned by or rented to an **Insured**.
  f.  land, other than farm land, owned by or rented to an **Insured** on which a one, two, three or four-family dwelling is being built as a residence for an **Insured**.
  g.  cemetery plots or burial vaults of an **Insured**.
  h.  a part of a premises rented on occasion to an **Insured** for purposes other than Business.

6.  "**Motor Vehicle**" means:
  a.  an amphibious vehicle.
  b.  a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to Motor Vehicle registration.
  c.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration.
  d.  any vehicle while being towed by or carried on a vehicle defined in 6.a., 6.b., or 6.c.

7.  "**Residence Premises**" means the one, two, three or four-family dwelling, other structures and grounds located at the **Residence Premises** address shown on the Declarations unless otherwise indicated.

8.  "**Aircraft**" means any machine or device capable of atmospheric flight, except models.

9.  "**Hovercraft**" means a self-propelled motorized ground effect vehicle which travels across land or water just above the surface on a cushion of air and includes, but is not limited to, flarecraft and air cushion vehicles.

10.  "**Watercraft**" means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

11.  "**Actual Cash Value**" means:
  a.  In the case of a total loss to buildings covered under Coverage A. or B., the policy limit or fair market value of the building, whichever is less; or
  b.  In the case of a partial loss to buildings covered under Coverage A. or B., or loss to other covered property, the amount it would cost to repair or replace covered property with material of like kind and quality, whichever is less, minus a reasonable deduction for physical deterioration and depreciation, including obsolescence based upon its condition at the time of loss or the policy limit, whichever is less.

In the case of a partial loss to buildings under Coverage A. or B., the deduction for physical deterioration shall apply only to components of the building that are normally subject to repair and replacement during the useful life of that building.

12.  "**Foundation**" means a building's substructure including substructural walls, including but not limited to basement walls and crawl space walls.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

13. **"Biological Deterioration or Damage"** meaning damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

14. **"Contamination or Pollution"** means any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:
   a.  solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;
   b.  vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;
   c.  fuel oil and other petroleum products; or
   d.  any other waste materials or other irritants, contaminants or pollutants.

15. **"Incidental Business"** means a **Business** activity, conducted on the **Residence Premises:**
   a.  with gross revenues of less than $10,000 in any calendar year; and
   b.  no employees of the **Incidental Business** are subject to workers' compensation or similar disability laws; and
   c.  it conforms to federal, state and local laws.

   **Incidental Business** also includes a farming operation on the **Residence Premises** involving:
   a.  farm employees working less than 1,250 hours; and
   b.  gross annual receipt from such farming operation of less than $25,000:
   during the policy period.

   Other words are also defined. All defined words are in bold print.

# Section I—Property Coverages

## Coverage Agreements

We cover all risk of accidental direct physical loss to property described in Coverages A., B. and C. below except for losses excluded under Section I—Property Exclusions.

## COVERAGE A—DWELLING

**We** cover:
1.  the dwelling on the **Residence Premises** used mainly as **your** private residence including attached structures.
2.  materials or supplies on or adjacent to the **Residence Premises** for use in construction, alteration or repair of:
   a.  the dwelling; or
   b.  Coverage B—Other Structures.

**We** do not cover land, including land on which the dwelling is located, or the replacement, rebuilding, restoration, stabilization or value of such land, except to the extent provided in Section I—Additional Property Coverages, Land.

## COVERAGE B—OTHER STRUCTURES

**We** cover other structures on the **Residence Premises.** They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

**We** do not cover:
1.  other structures used in whole or in part for **Business** purposes.
2.  other structures rented or held for rental to anyone, other than a tenant of the dwelling, unless used solely as a private garage.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

3. land, including land on which the structure is located, or the replacement, rebuilding, restoration, stabilization or value of such land, except to the extent provided in Section I—Additional Property Coverages, Land.

## COVERAGE C—PERSONAL PROPERTY

**We** cover personal property owned or used by an **Insured** while it is anywhere in the world. At **your** request, **we** will cover personal property owned by others. It must be on the part of the **Residence Prem-ises** occupied by an **Insured.** This extension of coverage does not increase the limit of liability.

**Our** limit of liability for personal property normally located at an **Insured's** residence other than the **Residence Premises** is 10 percent of the highest limit of liability for Coverage C applicable under this or any other policy issued by **us** or an affiliate company which provides coverage for **your** personal property. No coverage under this provision is afforded to the perils of Wind or Earthquake. This 10 percent limitation does not apply to personal property:
1. removed from the **Residence Premises** because:
   a. of a covered loss; or
   b. the **Residence Premises** is being repaired, renovated or rebuilt and it cannot be lived in or the prop-erty cannot be stored in it; or
2. in transit to and from, or while in a newly acquired principal residence for 60 days. The 60 days start right after **you** begin to move the property.

**SPECIAL LIMITS OF LIABILITY.** Certain property is subject to special limits which do not increase the personal property limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

The following special limits apply only to items lost, misplaced or stolen:
1. $5,000 for jewelry, watches, and precious and semi-precious stones.
2. $5,000 for furs.
3. $5,000 for guns, including accessories.
4. $10,000 for silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes, but is not limited to, flatware, hollowware, tea sets, trays and trophies made of or containing silver, gold or pewter.

The following special limits apply to all covered losses:
5. $1,500 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, stored value cards, smart cards, and gift certificates.
6. $5,000 for securities, accounts, bills, deeds, documents, including personal records, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, script and tickets.
7. $5,000 for stamps, coins and medals.
The limits in 6. and 7. above:
   a. apply no matter the medium, such as paper or computer software, on which the material exists;
   b. include costs to research, replace, reconstruct or restore information from the lost or damaged material; and
   c. apply only when such property is located outside of a bank vault or bank safe deposit box.
8. $25,000 for property, on the **Residence Premises,** primarily used for **Business** purposes.
9. $10,000 for property, away from the **Residence Premises,** primarily used for **Business** purposes.
10. $2,000 for **Watercraft** and outboard motors, including trailers, furnishings and equipment.
11. $3,000 for utility type trailers not used with **Watercraft.**

The following special limit applies only to breakage losses:
12. $50,000 for crystal, china, porcelains, figurines, statuary, sculptures, mirrors, wine bottles, glassware and sim-ilar items.

### PROPERTY NOT COVERED.

**We** do not cover:
1. articles separately described and specifically insured in this or any other insurance.
2. animals, birds or fish.
3. house or travel trailers.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

    4. **Motor Vehicles** or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:
       a. their parts or equipment, whether attached to or separated from the **Motor Vehicle** or motorized land conveyance;
       b. accessory equipment; or
       c. any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the **Motor Vehicle** or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment.
    **We** do cover vehicles or conveyances not subject to **Motor Vehicle** registration which are:
       a. used solely to service the **Insured's** residence;
       b. designed to assist the handicapped; or
       c. a motorized golf cart while being operated to or from, or on the premises of a golf course.
    5. **Aircraft** and parts.
    6. property of roomers, boarders, and other tenants. Personal property, at the **Residence Premises,** belonging to roomers and boarders related to an **Insured** is covered.
    7. property in an apartment regularly rented or held for rental to others by an **Insured,** except to the extent provided in Section I—Additional Property Coverages, Landlord's Furnishings.
    8. property rented or held for rental to others away from the **Residence Premises.**
    9. **Hovercraft** and parts.
    10. **Business** data, including such data stored in or on:
       a. books of account, drawings or other paper records; or
       b. computers and related equipment.
    **We** do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.
    11. contraband and property secured or transferred in the course of illegal trade.

## COVERAGE D—LOSS OF USE

**We** cover, subject to the coverage limit which is the total limit, all of the following:

1. **Additional Living Expense.** If a covered loss makes your house or other permanent structure uninhabitable, we cover the reasonable increase in your normal living expenses that is necessary to maintain your household's usual standard of living, including the kenneling of domestic animals not primarily owned or kept for business use. We cover this increase for the reasonable amount of time required to restore your house or other permanent structure to a habitable condition, or if you or members of your household permanently relocate, the shortest amount of time required to settle elsewhere. However, if you are newly constructing your house or other permanent structure or constructing additions, alterations, or renovations to your house or other permanent structure at the time of a covered loss, we only cover the increase in your normal living expenses incurred by you for the reasonable amount of time required to restore the house or other permanent structure to the condition it was in prior to the covered loss or twenty-four (24) consecutive months from the date of loss, whichever is less. This period of time is not limited by the expiration of this policy; and

2. **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the Residence Premises rented to others or held for rental, we will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the Residence Premises is uninhabitable. Payment will be for the actual loss sustained or twelve (12) months from the date of loss, whichever occurs first. This period of time is not limited by the end of the policy period; and

3. **Prohibited Use.** If a civil authority prohibits your use of the Residence Premises because of direct damage to neighboring premises by a peril Insured against in this policy, we will pay the resulting loss, for up to thirty (30) consecutive days while use is prohibited, for:
    a. Additional Living Expense; and
    b. Fair Rental Value.

**We** do not cover loss or expense due to cancellation of a lease or agreement.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

This coverage does not apply to an **Insured's Business,** whether conducted on or off any **Insured Location.**

No deductible applies to this coverage.

## *Additional Property Coverages*

These additional property coverages are subject to the policy deductible, exclusions, conditions and any special limit of liability that may apply to the property except as noted. In no event will the deductible be applied more than once to any one loss.

1. **Debris Removal.**
   a. **We** will pay reasonable expense **you** incur removing debris of:
      (1) covered property, if the peril causing the loss is covered; or
      (2) ash, dust or particles from a volcanic eruption that causes direct loss to a covered building or covered property inside a building.
   b. **We** will also pay, up to a maximum of, $2,500 for the reasonable expense **you** incur, for the removal from the **Residence Premises** tree(s) felled by the peril of Windstorm or Hail, or weight of Ice, Snow or Sleet, provided the tree(s):
      (1) damage(s) a covered structure;
      (2) does not damage a covered structure, but:
         (a) block(s) a driveway on the **Residence Premises** which prevents a **Motor Vehicle,** that is registered for use on public roads or property, from entering or leaving the **Residence Premises;** or
         (b) block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.
   This coverage is additional insurance.

2. **Reasonable Repairs. We** will pay reasonable cost **you** incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. Actions taken to repair other damaged property will be covered only if the other property is also covered under the policy and that other property was damaged by a covered cause of loss. These expenses are included in the limit of liability applying to the damaged property.

3. **Trees, Shrubs, Plants, and Lawns. We** cover trees, shrubs, plants, or lawns on the **Residence Premises** for loss caused by the following perils: fire and lightning; explosion; riot and civil commotion; **Aircraft;** vehicle not owned or operated by a resident of the **Residence Premises;** vandalism or malicious mischief; **Collapse** of a building; or, theft. Liability is limited to five percent of the Coverage A - Dwelling limit of liability, for all trees, shrubs, plants and lawns. It is limited to $2,500 for one tree, shrub or plant. This coverage applies only if the damaged property is replaced or repaired within one hundred eighty (180) days of the loss.

   **We** do not cover property grown for **Business** purposes or are part of, or a continuation of, a forest including national forest or wildlife preserve.
   This coverage is additional insurance.

4. **Fire Department Service Charge. We** will pay up to the amount stated on the Declarations for **your** liability under contract or agreement for customary fire department charges, or ordinance or statute. This applies when the charges result from the fire department being called to save or protect covered property from a covered peril. No deductible applies to this coverage.

5. **Property Removed.** Covered property removed from a premise because it is in danger from a covered peril is covered for direct loss from any cause. This does not change the coverage limit.

6. **Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage**. We will pay up to the amount stated on the Declarations for:
   a. the legal obligation of an **Insured** to pay theft or unauthorized use of credit cards (including Electronic Fund Transfer Cards or Access Devices) issued to or registered in an **Insured's** name. However, we do not cover use by a resident of **your** household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an **Insured** has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.
   b. loss to an **Insured** caused by forgery or alteration of a check or negotiable instrument.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

   c. loss to an **Insured** through good faith acceptance of counterfeit United States or Canadian paper curren-
      cy.

All losses resulting from a series of acts committed by any one person or groups of persons or in which any one person or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

**We** do not cover loss arising out of:
a. the Business pursuits, or dishonesty of an **Insured**.
b. identity theft or identity fraud, including a covered act as outlined in subsections a., b., or c. of this section.

This coverage is additional insurance. No deductible applies to this coverage.

**We** may make any investigation and settle any claim or Suit as **we** decide is appropriate. Our obligation to defend a claim or Suit ends when the amount **we** pay for the loss equals our limit of liability.
If a claim is made or a Suit is brought against an **Insured** for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, **we** will provide defense at our expense by counsel of our choice.

**We** may defend at our expense an **Insured** or an **Insured's** bank against a Suit for the enforcement of payment under the forgery coverage.

Our duty to defend does not apply to identity theft or identity fraud.

7. **Loss Assessment. We** agree to pay **your** share of an assessment charged against all members of the **Association. "Association"** means the management body of the property owners. They must have common property interest with **you.** The common property must be part of the housing development where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown on the Declarations, in effect at the time of the loss which results in an assessment.

The assessment must be the result of a direct loss to property collectively owned by the **Association.** It must be caused by a peril covered under Coverage A—Dwelling of this policy, other than earthquake, volcanic eruption, or land shock waves or tremors before, during or after a volcanic eruption.

The limit shown is the most **we** will pay for any one loss event, regardless of the number of assessments made relating to that loss event. **We** will only apply one deductible, per building or structure, to the total amount of any one loss to the property described above, regardless of the number of assessments. **We** will not pay more than $10,000 for any assessment that results from a deductible in **your Association's** insurance.

This coverage is excess over other valid and collectible insurance covering the **Association.**
**We** do not cover loss assessments charged against **you** or a corporation or **Association** of property owners by any governmental body.
This coverage is additional insurance.

8. **Inflation Protection Coverage. We** may adjust the limit of liability on the Declarations for Section I—Coverages upon renewal of **your** policy.
It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.
This coverage will not reduce **our** limit of liability during the current policy period below that for which premium has been paid.

9. **Collapse. We** cover direct physical loss to covered property described in Coverages A., B. and C. caused by the complete **Collapse** of a building structure or any part of a building structure. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **Collapse** if:
a. it is standing but in danger of falling down or caving in;
b. it is standing but has separated from any other part of the building;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

    c.  it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, lean-
ing, shrinkage, or expansion.
The **Collapse** must be sudden and accidental.

The presence of any decay, insect or vermin damage must be unknown to an **Insured** prior to
**Collapse.**

Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, **Foun-
dation,** retaining wall, bulkhead, pier, wharf, or dock is not included unless the loss is a direct result of the
**Collapse** of a building.

This coverage does not increase the limit of liability applying to the damaged property.

10. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss re-
sults in **Biological Deterioration or Damage** to property covered under Coverages A., B., and C., **we** will
pay, up to the amount shown on the Declarations, for:
  a.  the cost to clean up, remove and dispose of the **Biological Deterioration or Damage** to covered proper-
ty;
  b.  the cost to tear out and replace any part of the building or other covered property needed to gain access
to the **Biological Deterioration or Damage;**
  c.  the cost of testing which is performed in the course of clean up and removal of the **Biological
Deterioration or Damage** from the **Residence Premises;** and
  d.  additional living expenses **you** may incur, as outlined under Coverage D., that results from items a., b. or
c. above.
The coverage amount shown on the Declarations for this Additional Property Coverage is the most **we** will
pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if **you** report the
**Biological Deterioration or Damage** to **us** within one hundred eighty (180) days of having first discovered
the **Biological Deterioration or Damage.**

The covered cause of loss that causes or results in **Biological Deterioration or Damage** to covered property
must have occurred during the policy period.

This is an additional amount of coverage.

11. **Landlord's Personal Property.**
When there is an apartment on the Residence Premises that is regularly rented or held for rental to others by
an **Insured, we** will pay up to ten percent (10%) of the Coverage A—Dwelling limit of liability for loss to **your**
appliances, carpeting and other household furnishings resulting from a covered cause of loss.

This limit applies separately to each apartment on the Residence Premises and is the most **we** will pay re-
gardless of the number of appliances, carpeting or other household furnishings involved in the loss. This cov-
erage does not increase the limit of liability applying to the damaged property.

12. **Grave Markers. We** will pay up to $5,000 for grave or mausoleum markers located on or away from the Resi-
dence Premises for loss caused by a peril **Insured** against.
This coverage does not increase the limits of liability that apply to the damaged covered property.

13. **Lock Replacement. We** will pay the reasonable expense up to $1,000 to replace or rekey the
exterior door locks on **your** Residence Premises. This coverage applies only if the keys to **your** Residence
Premises are stolen. **You** must notify **us** within seventy-two (72) hours of discovering the keys have been sto-
len. No deductible applies to this coverage.

14. **Ordinance or Law.** If a covered peril causes a loss to property covered under Coverage A—Dwelling and
Coverage B—Other Structures, settlement will be based on enforcement of any ordinance or law regulating
the:
  a.  Construction;
  b.  Repair;
  c.  Renovation;
  d.  Remodeling; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

    e.  Demolition of the damaged building or other structure.

The damaged or destroyed building structure must be repaired or replaced at the Residence Premises. The most **we** will pay for this coverage is one hundred percent (100%) of the Coverage A—Dwelling limit of liability shown on the Declarations.
This is additional coverage.

**Special Exclusions**
**We** will not pay costs:
    a.  required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;
    b.  resulting from the enforcement of any ordinance or law requiring the:
        (1)  testing for;
        (2)  monitoring;
        (3)  clean up;
        (4)  removal;
        (5)  containment;
        (6)  treatment;
        (7)  detoxifying;
        (8)  neutralizing, or
        (9)  responding in any manner or assessing any effects of:
        **Contamination or Pollution** in or on covered buildings or other structures.
    c.  resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.
       However, exclusion c. does not apply:
        (1)  when it is necessary to remodel, remove or replace a portion of the undamaged building structure in order to complete repairs, replacement or remodeling of the damaged portion of the covered building structure; or
        (2)  if the total damage to the covered building structure is more than fifty percent (50%) of the building's **Replacement Cost,** less any ordinance or law expenses, at the time of the loss.
    d.  resulting in diminution in value of **Residence Premises.**

15. **Data Restoration. We** will pay up to a total of $5,000 for expenses incurred by **you** to replace or recreate **your** lost personal data stored on a personal computer or portable computing devices that **you** own or lease. Lost personal data must be the result of a covered loss.

16. **Refrigerated Food. We** will pay for loss to food or up to $5,000 for wine in a freezer or refrigeration unit due to temperature changes caused by:
    a.  A power interruption on or off the **Residence Premises;** or
    b.  Mechanical breakdown of the freezer or refrigeration unit. This coverage does not increase the limit of liability.
This coverage does not increase our limit of liability. No deductible applies to this coverage.

17. **Land.** If, as a result of a covered loss to the Coverage A—Dwelling or a building structure covered under Coverage B—Other Structures, the land under or immediately surrounding the dwelling or building structure requires excavation, replacement or stabilization, **we** will pay up to ten percent (10%) of the amount of loss of the dwelling or building structure for the excavation, replacement or stabilization of land expenses.
This coverage is additional insurance.

18. **Incidental Business Property. We** will pay up to $10,000 for loss to covered property used in connection with an **Incidental Business** conducted on the **Residence Premises.**

19. **Damaged Caused by Domestic Animals. We** will pay up to $5,000 for direct physical loss to covered property when such loss is caused by a domestic animal.

20. **Arson Reward. We** will pay up to a total of $5,000 for information that leads to an arson conviction associated with a fire loss to property covered by this policy. This is the most **we** will pay regardless of the number of persons providing information. This is additional coverage.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

    

CRESTBROOK INSURANCE COMPANY

## *Property Exclusions*

**(Section I)**

1. **We** do not cover loss to any property resulting directly or indirectly from any of the following.
    a. Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or un-natural causes, including subsidence; earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mudslide; mudflow; earth shifting, rising or sinking. Volcanic erup-tion means: eruption, explosion, or discharge from a volcano.
    Resulting direct loss by fire, explosion or theft is covered.
    However, any resulting loss is covered unless another exclusion applies.
    b. Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered. Water and water-borne material damage means:
        (1) flood, surface water, waves, tidal water, overflow of water from a body of water, or water borne mate-rial from any of these, including when such waters or water borne material enters and backs up or discharges from or overflows from any sewer or drain located outside of or separate from the dwelling foundation;
        (2) run off of water or water borne material from a paved surface, driveway, walkway, patio, or other simi-lar surface; or spray from any of these, even if driven by wind.
        (3) water or water-borne material below the surface of the ground, including water or water-borne materi-al which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, **Foundation,** swimming pool, or other structure.
        However, any resulting loss is covered unless another exclusion applies.

        This exclusion 1.b. does not apply to personal property away from the **Residence Premises.**
        However, this exclusion 1.b. does apply when covered personal property is located at another residence owned by an **Insured.**
    c. Neglect, meaning neglect of the **Insured** to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.
    d. War or Warlike Acts. This includes insurrection, rebellion or revolution. Discharge of a nuclear or biologi-cal weapon is considered a warlike act even if accidental.
    e. Nuclear Hazard, meaning any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these. Loss caused by nu-clear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifi-cally named in or otherwise included as a covered peril in Section I.
    Resulting direct loss by fire is covered.
    f. Increased Hazard, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an **Insured.**
    g. Intentional Acts, meaning loss resulting from an act committed by or at the direction of an **Insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **Insureds.**
    However, if loss to covered property is the result of fire, this exclusion **1.g.** applies only to the **Insured** who committed or directed the act causing the fire loss. Coverage for an innocent **Insured** is limited to that **Insured's** legal interest, not to exceed the applicable limit of liability. **We** may apply reasonable standards of proof to claims for such loss.
    h. **Collapse,** except as provided by Section I—Additional Property Coverages—**Collapse.** However, any re-sulting loss to property covered under Coverages A. and B. is covered unless otherwise excluded in this policy.
    i. **Contamination or Pollution.**
    j. Government Acts, meaning any loss caused by seizure, destruction, or confiscation by order of any gov-ernment or public entity.
    Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.
    k. **Biological Deterioration or Damage,** except as provided by Section I—Additional Property Coverages—**Biological Deterioration or Damage** Clean Up and Removal.
    l. Tsunami, meaning loss resulting from a tsunami caused by, but not limited to, any of the following:
        (1) earth movement, including:
            (a) earthquake;
            (b) volcanic eruption;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

         (c)  avalanche, rock or ice falls;
         (d)  landslides; or
         (e)  subsidence;
         whether occurring above or below sea level;
    (2)  asteroids or meteorites; or
    (3)  nuclear explosion.

m.  Diminution in value or depreciation.

n.  Power failure, meaning the failure of power or other utility services if the failure takes place off the **Residence Premises**. However, if the failure of power or other utility services results in a loss on the **Residence Premises** from a peril **Insured** against under this policy, **we** will pay for the loss or damage to covered property caused by the peril.
    This exclusion 1.n. does not apply to Section I—Additional Property Coverages, Refrigerated Food.

o.  Computer error, meaning loss caused by an error in the operating programs or instructions.

p.  A fault, weakness, defect or inadequacy in the:
    (1)  specifications, planning, zoning;
    (2)  design, workmanship, construction, materials;
    (3)  surveying, grading, backfilling;
    (4)  development or maintenance;
    of any property on or off the **Residence Premises,** whether intended or not. However, any resulting loss is covered unless another exclusion applies.

q.  Acts or decisions of any person, group, organization or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned.
    However, any resulting loss is covered unless another exclusion applies.

r.  Weather, Temperature or Dampness. Weather conditions include changes in temperature or air dampness. This exclusion does not apply to direct loss caused by rain, sleet, snow or hail.

s.  freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.
    This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
    (1)    maintain heat in the building; or
    (2)    shut off the water supply and drained the system and appliance of water.
    If an automatic fire protective sprinkler system protects the covered building, **you** must use reasonable care to maintain the water supply and heat in the building for coverage to apply.
    A plumbing system or household appliance does not include a sump pump, sump pump well or other system designed to remove subsurface water drained from the **Foundation** area.
    However, any resulting loss is covered unless another exclusion applies.

t.  freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:
    (1)    fence, pavement, patio tennis court, hot tub or spa, septic system, or swimming pool;
    (2)    **Foundation,** retaining wall, or bulkhead; or
    (3)    pier, wharf, bridge, or dock.
    However, any resulting loss is covered unless another exclusion applies.

u.  continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from a:
    (1)  heating, air conditioning or automatic protective sprinkler system;
    (2)  household appliance;
    (3)  plumbing system; or
    (4)  water, steam or sewer pipes, or storm drains located off the **Residence Premises.**
    A plumbing system or household appliance does not include a sump pump, sump pump well or other system designed to remove subsurface water drained form the **Foundation** area.

    However, any resulting loss is covered unless another exclusion applies. If loss caused by water or steam is not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. **We** do not cover loss to the system or appliance from which the water or steam escaped.

v.  Theft in or to a dwelling under construction or of material and supplies for use in the construction until the dwelling is completed and occupied.
    However, any resulting loss is covered unless another exclusion applies.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

w. Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than thirty (30) consecutive days immediately before the loss. A dwelling under construction is not considered vacant. This exclusion applies to Coverages A. and B. only.
However, any resulting loss is covered unless another exclusion applies.

x. Loss caused by any birds, vermin, rodents or insects. Resulting breakage of glass constituting a part of a covered building is covered.
However, any resulting loss is covered unless another exclusion applies.

y. Loss caused by any non-domestic animals owned or kept by an **Insured.** Resulting breakage of glass constituting a part of a covered building is covered.
However, any resulting loss is covered unless another exclusion applies.

z. Gradual or Sudden Loss due to:
   (1) wear and tear, marring, deterioration;
   (2) inherent vice, latent defect, mechanical breakdown;
   (3) smog, rust;
   (4) smoke from agricultural smudging or industrial operations;
   (5) settling, cracking, shrinking, bulging or expansion of pavements, patios, **Foundations,** walls, floors, roofs or ceilings;
   (6) root growth, movement or action;

If any of items 1.z.(1) through (6) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, **we** cover loss caused by the water not otherwise excluded. **We** also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which the water escaped.

aa. Ordinance Or Law
Ordinance Or Law means any ordinance or law:
   (1) Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion does not apply to the coverage that may be provided for in Ordinance Or Law under Section I—Additional Property Coverages;
   (2) The requirements of which result in a loss in value to property; or
   (3) Requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, de-toxify or neutralize, or in any way respond to, or assess the effects of contamination or pollution.
This Exclusion applies whether or not the property has been physically damaged.

2. **We** do not cover loss to property described in Coverage C. resulting directly from any of the following:
   a. dampness or extremes of temperatures unless the direct cause of loss is rain, snow, sleet or hail.
   b. damage caused by repairing, restoration or retouching. This exclusion does not apply to jewelry, watches and furs.
   c. collision, except that occurring with a land vehicle.
   d. sinking, swamping or standing of **Watercraft,** including their outboard motors furnishings and equipment.
   e. Misappropriation or theft of an **Insured's** personal property by another **Insured.**
   f. Failure of a wine cellar or storage unit's climate control system resulting in a loss to wine due to temperature change. The failure of the climate control system must be caused by a power interruption resulting from a brownout or blackout.

However, under exclusions 2.a. through 2.f. any resulting loss to property covered under Coverage C. is covered unless otherwise excluded in this policy.

## *Property Conditions*

**(Section I)**

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:
   a. to the **Insured** for more than the **Insured's** interest.
   b. for more than the limit of liability.

2. **Deductible.** The deductible amount shown on the Declarations, coverages included in the policy or endorsements attached to this policy, applicable to a covered loss, is the amount of loss paid by the **Insured.** Different deductible amounts may apply to different causes of loss. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property. **We** pay for covered loss above the applicable deductible amount.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

In the event that a covered loss to the dwelling equals or exceeds the Coverage A—Dwelling limit of liability **we** will waive up to $50,000 of the deductible amount. **Your** deductible will be that portion of the applicable deductible above $50,000.

However, when all or the majority of **your** furnishings and other personal property have been removed from the **Residence Premises** more than thirty (30) consecutive days prior to a loss, and **you** have not given **us** advance notice of **your** removal of such personal property, the waiver of the deductible does not apply. The following deductible condition applies:

In the event of a covered loss, the deductible will be the greater of:

a. The Section I Deductible as shown on the Declarations;
b. Five percent of the Coverage A—Dwelling limit of liability at the time of loss; or
c. The deductible applicable to the cause of loss.

3. **Your Duties after Loss.** In case of loss, you must:
   a. give immediate notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company.
   b. protect the property from further damage. **You** must make repairs required to protect the property and also keep a record of repair expenses.
   c. as often as **we** reasonably require:
      (1) show **us** the damaged property;
      (2) provide records and documents **we** request and permit **us** to make copies; and
      (3) submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.
   d. submit to **us**, within sixty (60) days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:
      (1) the time and cause of loss.
      (2) interest of the **Insured** and all others in the property involved and all liens on the property.
      (3) other insurance that may cover the loss.
      (4) changes in title or occupancy of the property during the term of the policy.
      (5) specifications of any damaged property and detailed estimates for repair of damage.
      (6) a list of damaged personal property showing in detail the quantity, description, **Actual Cash Value,** and amount of loss. Attach all bills and receipts that support the figures.
      (7) receipts for additional living expenses and records supporting the fair rental value loss.
      (8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.
      (9) evidence or affidavit supporting a claim under the Identity Theft or Identity Fraud Coverage. It should include bill, receipts, or other records that support a claim for expenses under the coverage. It should state the amount and cause of loss.

4. **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by **us** paying:
   a. Under Coverage C—Personal Property, **Replacement Cost** or the full cost to repair, at the time of loss, without deduction for depreciation.
      "**Replacement Cost**" means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When a new article is no longer available, **Replacement Cost** shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

      **Our** limit of liability for loss shall be the lesser of:
      (1) **Replacement Cost** at the time of loss;
      (2) full cost of repair;
      (3) any special limits of liability described in this policy or attached by endorsement; or
      (4) **our** cost to repair or replace any pair of the damaged or stolen property with equivalent property.
      **You** may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of:
      (1) repair cost;
      (2) **Replacement Cost;** or
      (3) any special limit of liability that applies.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

If **you** later decide to repair or replace those items, **you** may make an additional claim within twelve (12) months after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the twelve (12) months, but payment will not be made until proof of repair or replacement is provided to **us.**
This coverage does not apply to:

(1)   Manuscripts, antiques or fine arts, which by their inherent nature cannot be replaced with new articles.

(2)   Memorabilia, souvenirs, collectors' items, and other similar items whose age and history contribute substantially to their value.

(3)   Property not maintained in good or workable order.

(4)   Property which is obsolete or useless to **you** at the time of loss.

b.   Covered losses to **your** property under  Coverage A – Dwelling will  be settled  as follows:
**We** will pay  the cost of repair or replacement, without  deduction for depreciation  and  without regard  to the  limit of liability.
However, in the event of a covered loss to the dwelling:

(1)   that occurs when it is being newly constructed; or

(2)   that occurs during construction of additions or renovations; and

(3)   at the time of loss **you** have not occupied the dwelling for more than 30 consecutive days during such construction or renovation;

**we** will only pay up to 125% of the applicable limit of liability. This limitation does not apply if, prior to a loss, **we** have provided **you** with **our** written consent.

**You** agree to:

(1)   Insure **your** dwelling to at least 100% of its replacement cost as determined by **our** replacement cost estimation or an inspection performed by a recognized appraisal agency authorized by **us;**

(2)   Repair or replace the Dwelling with materials of like kind and quality on the **residence premises**; or, for no greater cost, buy or build a Dwelling at another location. If **you** choose not to repair or replace, we will only pay **you** the cost to repair or rebuild the damaged Dwelling at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less.

(3)   Promptly notify us of a renovation that increases the replacement cost of the Dwelling or Other Structure more than five (5) percent or $500,000, whichever is less;

(4)   Notify **us** prior to the start of a **renovation** which will cause **your** dwelling to be:
i.   vacant; or
ii.   not **occupied** by **you** for more than 30 days

(5)   Accept annual adjustments due to **Inflation Protection Coverage**; and

(6)   Pay any additional premium.

This coverage does not increase the coverage limits of Coverage B. C or D of the policy.

c.   Under Coverage B—Other Structures, the cost to repair or replace without deduction for depreciation based on equivalent construction and use on the same premises even if **you** choose not to repair or replace.
However, in the event of a covered loss to the other structure:

(1)   that occurs during construction of additions or renovations; and

(2)   **you** have temporarily relocated during such construction or renovation;

**we** will pay **Actual Cash Value** unless **you** have notified **us** prior to the loss of such construction. This limitation does not apply if, prior to a loss, **we** have provided **you** with **our** written consent.

5.   **Loss Payment. We** will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:

a.   In case of loss to a pair or set, **we** may elect to:

(1)   repair or replace a part to restore the pair or set to its value before the loss;

(2)   pay **our** cost to replace the pair or set;

(3)   pay the difference between market value of the property before and after the loss; or

(4)   pay full **Replacement Cost** of the pair or set provided **you** give **us** the remaining parts.

b.   At **our** option, **we** may repair or replace any part of the damaged property with equivalent prop-erty, providing **we** give **you** written notice within thirty (30) days after receiving **your** signed, sworn proof of loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

    c.  **We** will pay you unless some other person is named in this policy to receive payment. Payment will be made within thirty (30) days after **we** receive **your** proof of loss and:
        (1)    reach agreement with **you;** or
        (2)    there is an entry of a final judgment; or
        (3)    there is a filing of an appraisal award with **us.**
    d.  After **we** have paid for a loss by theft or disappearance of covered property, **we** have the right to all or part of any recovered property. **You** must protect these rights and inform **us** of any value of such property.
    e.  After **we** have paid for a loss, **we** have the right to all or part of any salvageable property. **We** may permit **you** to keep the damaged property but **we** will reduce the amount of the loss paid to **you** by the value of the retained property.
    f.  After **we** have paid for loss to covered property, **we** may reduce any payment due for any subsequent loss for damage to the same covered property, unless **you** have furnished **us** with proof that the prior damage has been repaired.

6.  **Appraisal. If you** and **we** fail to agree on the amount of loss, either can request that the amount be set by appraisal. If either makes a written request for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within twenty (20) days of receipt of the written request. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within fifteen (15) days, **you** or **we** can ask a judge of a court of record in the state where the **Residence Premises** is located to select a competent, impartial umpire.

The appraisers will then set the amount of loss, stating separately the loss to each item. If the appraisers submit a written report of an agreement to **us,** the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us.** Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve. This is not a provision providing for or requiring arbitration.

The appraisers and umpire are only authorized to determine the **Actual Cash Value, Replacement Cost,** or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between **you** and **us.** The appraisal award cannot be used by either **you** or **us** in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon **you** and **us.** This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you** and **us.**

7.  **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:
    a.  other insurance, **we** will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or
    b.  a service agreement, the insurance provided by this policy is excess over any such agreement.
    Service agreement means:
        (1)  a service plan;
        (2)  property restoration plan;
        (3)  home or appliance warranty; or
        (4)  other similar service warranty; even if it is described as insurance.

8.  **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. Any action must be started within one year after the date of loss or damage.

9.  **Abandonment of Property. We** need not accept property abandoned by an **Insured.**

10.  **Mortgage Clause.** The word "mortgagee" includes trustee. If a mortgagee is named in this policy, a loss payable under Coverage A. or B. will be paid to the mortgagee and **you,** as interests appear. If more than one

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

mortgagee is named, the order of payment will be the same as the order or pre-cedence of the mortgages. If **we** deny **your** claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. notifies **us** of change in ownership, occupancy, or substantial change in risk of which the mort-gagee is aware.

b. pays premium due under this policy on **our** demand, if **you** neglected to pay the premium.

c. submits a signed, sworn proof of loss within sixty (60) days after receiving notice from **us** of **your** failure to do so. Policy conditions relating to **Your** Duties after Loss, Loss Payment, Appraisal, and **Suit** Against **Us** apply to the mortgagee.

If **we** cancel the policy, **we** will notify the mortgagee at least ten (10) days before the cancellation takes effect.

If **we** pay the mortgagee for loss and deny payment to **you:**

a. **we** are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, **we** will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** This insurance does not benefit a person or organization that is caring for or handling **your** property for a fee.

12. **Glass Replacement. We** will replace covered glass using safety-glazing materials when required by ordi-nance or law.

13. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a seventy-two (72) hour period will be considered as one volcanic eruption.

14. **Protective Device Credit** If credit is given as shown on the Declarations Page, **you** agree to:

a. maintain these devices in working order; and

b. notify **us** promptly of any changes made in the devices or if they are removed.

15. **Policy Period.** This policy applies only to loss which occurs during the policy period.

## Section II—Liability Coverages

**ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES**

For purposes of these coverages only:

1. **"Bodily Injury"** means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily Injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. **"Property Damage"** means physical injury to or destruction of tangible property. This includes its re-sulting loss of use.

3. "**Personal Injury**" means:

a. false arrest, false imprisonment, wrongful eviction, wrongful entry;

b. wrongful detention or malicious prosecution;

c. libel, slander, defamation of character, or invasion of rights of privacy;

d. shock, emotional distress or mental injury;

e. assault and battery when committed with the intent of protecting persons.

4. **"Residence Employee"** means an **employee** of an **Insured** who performs duties in connection with mainte-nance or use of the **Residence Premises.** This includes household or domestic services or similar duties per-formed elsewhere not in connection with the **Business** of an **Insured.**

It includes an **employee** leased to an **Insured** by a labor leasing firm, under an agreement with an **Insured,** to perform such duties.

**Residence Employee** does not include a temporary **employee** that substitutes for a permanent **Residence Employee** on leave or to meet seasonal or short-term workload conditions.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

5. **"Occurrence"** means an accident, including continuous or repeated exposure to the same general condition. It must result in **Bodily Injury, Property Damage** or **Personal Injury** caused by an **Insured.** The **Occurrence** resulting in **Bodily Injury** or **Property Damage** must be during the policy period. The **Occurrence** resulting in **Personal Injury** must be due to an offense first committed during the policy period.

6. **"Employee"** means an **employee** of an **Insured** other than a **Residence Employee.** It includes an **employee** leased to an **Insured** by a labor leasing firm under an agreement between an **Insured** and the labor leasing firm. Such employees perform duties other than those performed by a **Residence Employee.**

7. **"Professional Services"** includes but is not limited to:
   a. legal, accounting or advertising services;
   b. preparing, approving, or failing to prepare or approve:
      (1) maps;
      (2) drawings;
      (3) opinions;
      (4) reports;
      (5) surveys;
      (6) change orders;
      (7) designs; or
      (8) specifications;
   c. supervisory, inspection, engineering, or architectural services;
   d. medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
   e. any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, personal grooming or tattooing;
   f. optometry or optical or hearing aid services, including but not limited to the prescribing, pre-paring, fitting, demonstrating or distributing of ophthalmic lenses and similar products or hearing aid services;
   g. body piercing services;
   h. pharmacological services; and
   i. any other health or therapeutic service, treatment, advice or instruction.

8. **"Suit"** means a civil proceeding in which damages because of an **Occurrence** to which this insurance applies are alleged. **Suit** includes, but is not limited to:
   a. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with **our** consent; or
   b. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with **our** consent.

## Coverage Agreements

### COVERAGE E—PERSONAL LIABILITY

**We** will pay damages an **Insured** is legally obligated to pay due to an Occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property at the **insured location. We** will provide a defense at our expense by counsel of our choice. **We** may investigate and settle any claim or Suit. Our duty to defend a claim or Suit ends when the amount **we** pay for damages equals our limit of liability.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over this policy.

### COVERAGE F—MEDICAL PAYMENTS TO OTHERS

**We** will pay the necessary medical and funeral expenses incurred within three years after an accident causing **Bodily Injury.** This coverage does not apply to **you.** It does not apply to regular residents of **your** household. It does apply to **Residence Employees.** Payment under this coverage is not an admission of **our** or an **Insured's** liability. This coverage applies as follows:

1. to a person on the **Insured Location** with consent of an **Insured.**
2. to a person off the **Insured Location,** if the **Bodily Injury:**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

    a.   arises out of a condition on the **Insured Location** or the ways immediately adjoining.

    b.   is caused by the activities of an **Insured.**

    c.   is caused by a residence **employee** of an **Insured** arising out of and in the course of employment by an **Insured.**

    d.   is caused by an animal owned by or in the care of an **Insured.**

## Additional Liability Coverages

**We** will pay the following in addition to the limits of liability.

1.  **Claims Expenses. We** will pay:

    a.   expenses **we** incur and costs taxed against an **Insured** in a legal action **we** defend.

    b.   premiums on bonds required in a **Suit we** defend. This does not include bond amounts greater than the Coverage E limit of liability. **We** are not obligated to apply for or furnish a bond.

    c.   reasonable expenses incurred by an **Insured** at our request, up to a maximum of $10,000 for assisting **us** in the investigation or defense of a claim or **Suit.**

    d.   post-judgment interest. This must accrue after entry of the judgment. It must accrue before **we** pay or deposit in court that part of the judgment which does not exceed the coverage that applies.

    e.   prejudgment interest awarded against an **Insured** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

2.  **First Aid Expenses. We** will pay expenses for first aid to others incurred by an **Insured** for **Bodily Injury** covered under this policy. **We** will not pay for first aid to **you** or any other **Insured.**

3.  **Damage to Property of Others. We** will pay for **Property Damage** to property of others caused by an **Insured** regardless of legal liability. **We** will pay up to $1,000 per **Occurrence,** but not more than the smallest of the **Replacement Cost** or the cost to repair the damaged property. **We** will not pay for **Property Damage:**

    a.   to property covered under Section I.

    b.   caused intentionally by an **Insured** who is age thirteen (13) or older.

    c.   to property owned by or rented to an **Insured,** a tenant of an **Insured,** or a resident in **your** household.

    d.   arising out of:

        (1)  **Business** pursuits.

        (2)  an act or omission in connection with a premises owned, rented, or controlled by an **Insured,** other than an **Insured Location.**

        (3)  the ownership, maintenance, use, loading or unloading of a **Motor Vehicle, Aircraft,** or **Watercraft.**

4.  **Loss Assessment.**

    **We** agree to pay **your** share of an assessment charged against all members of the **Association.** "**Association**" means the management body of the property owners. They must have common property interest with **you.** The common property must be part of the housing development where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown on the Declarations, in effect at the time of the loss which results in an assessment. **We** will not pay more than $10,000 for any assessment that results from a deductible in **your Association's** insurance.

    The assessment must be the result of:

    a.   an **Occurrence** not excluded from coverage under Section II—Liability; or

    b.   Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

        (1)  is elected by the members of a corporation or **Association** of property owners; and

        (2)  serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or **Association** of property owners.

    The limit shown is the most **we** will pay for any one loss event, regardless of the number of assessments made relating to that loss event. An act involving more than one director, officer or trustee is considered to be a single act.

    This coverage is excess over other valid and collectible insurance covering the **Association.**

    **We** do not cover assessments charged against **you** or a corporation or **Association** of property owners by any governmental body.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

5. **Employers' Liability Coverage—Residence Employees**
   A residence **employee** is covered as follows provided such person has during the ninety (90) days immediately before the date of injury:
   a.  been employed by the **Insured** for no less than fifty-two (52) hours; and
   b.  earned no less than one hundred dollars ($100) in wages.
   Employers' Liability Coverage applies only to **Bodily Injury** that occurs during the policy period. If the **Bodily Injury** is a disease, it must be caused or aggravated by the conditions of the **Residence Employee**'s employment by an **Insured.**

6. **Employers' Liability Coverage**
   **We** will pay all sums which an **Insured** is legally obligated to pay as damages because of **Bodily Injury** sustained by a **Residence Employee.**

   Our total limit of liability for Employers' Liability coverage will not exceed $100,000 for all damages resulting from **Bodily Injury:**
   a.  Sustained by one or more **Residence Employees** in any one accident; or
   b.  Caused by disease and sustained by a **Residence Employee.**

   The most **we** will pay for all damages arising out of **Bodily Injury** by disease regardless of the number of **Residence Employees** who sustain **Bodily Injury** is $500,000.

   The **Bodily Injury** must be caused by accident or disease and arise out of and in the course of employment by the **Insured** while:
   a.  in the United States of America, its territories or possessions, or Canada; or
   b.  temporarily elsewhere if the **Residence Employee** is a citizen or resident of the United States of America or Canada.

   This coverage does not apply to:
   a.  Any **Suit** brought in or judgment rendered in any court outside the United States of America, its territories or possessions, or Canada or to any action on such judgment wherever brought.
   b.  Liability assumed under any contract or agreement.
   c.  **Bodily Injury** by disease, unless within thirty-six (36) months after the end of the policy period, written claim is made or **Suit** is brought against an **Insured** for damages because of **Bodily Injury.**
   d.  Any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

**Exclusions—Employers' Liability Coverage**
1.  **We** do not cover liability for additional compensation imposed on an **Insured** because of the serious and willful misconduct of an **Insured** or because of **Bodily Injury** to an **Employee** under sixteen (16) years of age and illegally employed at the time of injury.
2.  **We** do not cover liability for **Bodily Injury** arising out of **Business** pursuits of an **Insured.**

**Other Insurance**
This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

**Conformity to Statute**
Any terms of this insurance which are in conflict with the applicable Workers' Compensation Law are amended to conform to that law.

## *Liability Exclusions*

**(Section II)**

1.  Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to **Bodily Injury, Property Damage or Personal Injury:**
   a.  caused intentionally by or at the direction of an **Insured,** including willful acts the result of which the **Insured** knows or ought to know is likely to follow from the **Insured's** conduct.
   b.  caused by or resulting from an act or omission which is criminal in nature and committed by an **Insured.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

This exclusion 1.b. applies regardless of whether the **Insured** is actually charged with, or convicted of a crime.

c.  arising out of **Business** pursuits of an **Insured**. This exclusion applies, but is not limited to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **Business**.
This exclusion 1.c. does not apply to:
(1)  activities normally considered non-business.
(2)  volunteer activities related to organized charitable, religious or community groups.
(3)  occasional or part time self-employed **Business** pursuits of an **Insured** under age twenty-one (21) years old (age twenty-four [24] if a full-time student).
(4)  an office, school, studio, barber or beauty shop on the **Residence Premises** if noted on the Declarations or endorsement attached to the policy.
(5)  home care services provided by or at the direction of an **Insured** on or from the **Residence Premises** if noted on the Declarations or endorsement attached.
(6)  **Incidental Business** activities.
(7)  loss arising out of the physical condition of the **Residence Premises** and resulting directly from **Business** pursuits of an **Insured** being conducted on the residence premises provided that:
(a)  any of the **Business'** employees are not subject to workers' compensation or other similar disability laws;
(b)  the **Business** does not provides home care services; and
(c)  there is no other valid and collectible insurance.

d.  arising out of the rental or holding for rental of any part of any premises by an **Insured**. Exceptions, if any, are noted on the Declarations or endorsement attached to the policy.
This exclusion 1.d. does not apply to the rental or holding for rental of part of **your Residence Premises**:
(1)  occasionally for the exclusive use as a residence.
(2)  unless intended as a residence by more than two roomers or boarders.
(3)  as a private garage.

e.  arising out of any **Professional Services**.

f.  arising out of premises owned or rented to an **Insured** but not an **Insured Location**.
This exclusion 1.f. does not apply to **Bodily injury** to any **Residence Employee** arising out of and in the course of employment by an **Insured**.

g.  arising out of the ownership, maintenance, use of, or loading or unloading of; entrustment or the negligent supervision by an **Insured** of; or statutorily imposed liability on an **Insured** related to the use of:
(1)  an **Aircraft**.
(2)  a **Motor Vehicle** or all other motorized land conveyance owned by or operated by, or rented or loaned to an **Insured**.
This exclusion 1.g.(2) does not apply to:
(a)  a vehicle owned by an **Insured** and designed for recreation off public roads while on an **Insured Location**.
(b)  a motorized golf cart while being operated:
(i)  to or from, or on the premises of a golf course; or
(ii)  within the legal boundaries of the residential community, governed by an **Asso-ciation** of property owners, in which the **Insured's** residence is located. This includes public roads within the residential community provided that a motorized golf cart can legally travel such roads.
(c)  a vehicle not subject to **Motor Vehicle** registration which is:
(i)  used to service an **Insured's** residence; or
(ii)  designed for assisting the handicapped.
(d)  a vehicle in dead storage on an **Insured Location**. Dead storage means physically prepared for long term storage.
(e)  a boat, camp, home or utility trailer not being towed or carried on a vehicle defined in general Definition 6.a..
(f)  bodily injury to any **Residence Employee** arising out of and in the course of employment by an **Insured**.
(3)  a **Watercraft** owned or operated by, or rented or loaned to an **Insured**:
(a)  if the **Watercraft** is a personal **Watercraft** powered by an internal combustion engine and utilizing a water jet pump or has inboard, inboard-outdrive or outboard motor power of more than fifty (50) horsepower.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

    (b)  if it is a sailing vessel, with or without auxiliary power, twenty-six (26) feet or more in overall length.

    (c)  while rented to others.

    (d)  while being used to carry persons or property for a fee or compensation.

    (e)  while being used without an **Insured's** permission.

    (f)  while being used in an official race or speed test. This exclusion does not apply to sailboats.

    (g)  if it is an airboat, air cushion or similar type **Watercraft.**

    This exclusion 1.g.(3) does not apply:

    (a)  while the **Watercraft** is stored.

    (b)  when an **Insured** rents or borrows a nonowned outboard motor boat for thirty (30) or less consecutive days.

    (c)  to **Bodily Injury** to any **Residence Employee** arising out of and in the course of employment by an **Insured.**

  (4)  a **Hovercraft.**

h.  caused by an act of terrorism or by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear or biological weapon is a warlike act, even if accidental.

i.  resulting from an **Insured** transmitting a communicable disease.

j.  arising out of asbestos or any asbestos-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving asbestos, its use, exposure, existence, detection, removal, elimination or avoidance or actions arising from a failure to disclose the presence of asbestos.

k.  arising out of electromagnetic emissions or radiation-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving any electromagnetic emissions or radiation for use, exposure, existence, detection, removal, elimination or avoidance or electrical energy.

l.  arising from the exposure to, or ingestion, inhalation or absorption of, lead or lead compounds.

m.  radon or any other radioactive emissions, manmade or natural, or any related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, omission, failure to warn or other duty involving radon or any other radioactive emissions, their use, exposure, existence, detection, removal, elimination or avoidance.

n.  arising out of any **Contamination or Pollution.**

This exclusion 1.n. also applies to any claims, **Suit**, loss, cost or expense arising out of any required testing, monitoring, clean up, removal, containment, or other actions to determine or respond to the effects of **Contamination or Pollution.**

This exclusion 1.n. does not apply to **Bodily Injury** arising out of routine lawn and garden care of an **Insured Location.**

o.  resulting from acts or omissions relating directly or indirectly to sexual molestation, corporal pun-ishment, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

p.  resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.

This exclusion 1.p. does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

q.  **Bodily Injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by any **Insured** under:

  (1)  a workers' compensation;

  (2)  an unemployment compensation;

  (3)  a non-occupational or occupational disease;

  (4)  disability benefits;

or any similar law.

r.  any "**Bodily Injury**" to a "farm employee" employed in violation of law with the knowledge of an **Insured.**

s.  arising out of **Biological Deterioration or Damage.**

t.  resulting from acts, errors or omissions of an **Insured** acting as an officer or member of a board of directors or committee of any corporation or organization.

This exclusion 1.t. does not apply to an **Occurrence** resulting from the **Insured's** volunteer act-ivities for a non-profit corporation, or a condominium or cooperative **Association** unless excluded elsewhere in this policy or attached endorsement.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

  u. resulting from civic or public activities performed by an **Insured** for pay, other than reimbursement of expenses.
  v. sustained by a person as a result of an offense directly or indirectly related to that person's employment by an **Insured,** including wrongful termination of employment.
  w. resulting from discrimination or harassment, whether actual, alleged or threatened, due to age, race, national origin, gender, religious belief, physical or mental impairment, sexual orientation, or any other discrimination.

2. Coverage E—Personal Liability does not apply to:
  a. liability under any loss assessment contract or agreement except as provided in Section II—Additional Liability Coverages, Loss Assessment and then only up to the limit of liability shown for the coverage.
  b. liability assumed under any written or unwritten contract or agreement, or by contract or agreement in connection with any **Business** of an **Insured.**
  c. **Property Damage** to property owned, produced or distributed by an **Insured.** This includes costs or expenses incurred by an **Insured** or others at the direction of an **Insured** to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **Insured Location.**
  d. **Property Damage** to property rented to, occupied or used by, or in the care of an **Insured.**
    This exclusion 2.d. does not apply to **Property Damage:**
    (1) caused by fire, smoke, or explosion; or
    (2) to house furnishings or premises rented to, occupied or used by or in the care of an **Insured** for which the **Insured** is legally liable.
  e. **Bodily Injury** or **Property Damage** for which an **Insured** under this policy is also an **Insured** under a nuclear energy liability policy; or would be an **Insured** but for its termination upon exhaustion of its limit of liability.
  f. **Bodily Injury** or **Personal Injury** to an **Insured** as defined in Definitions 4.a. and 4.b. This exclusion includes any actions brought against **you** or any other **Insured** to repay or pay a portion of damages with another person who may be obligated to pay damages because of **Bodily Injury** or **Personal Injury** to an **Insured.**

3. Coverage F—Medical Payments to Others does not apply to **Bodily Injury:**
  a. to a **Residence Employee** if it occurs off the **Insured Location.** It does apply if the **Bodily Injury** arises out of the **Residence Employee's** employment by an **Insured.**
  b. from a nuclear reaction, radiation or radioactive contamination, or a consequence of any of these. It does not matter that these are controlled or uncontrolled.
  c. to any person, other than a **Residence Employee** of an **Insured,** regularly residing on any part of the **Insured Location.**

4. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to any **"Bodily Injury"** to a "farm employee" employed in violation of law with the knowledge of an **"Insured."**

## Liability Conditions

**(Section II)**
1. Limits of Liability. **Our** total liability under Coverage E. for all damages resulting from one **Occurrence** will not exceed the limit for Coverage E. shown on the Declarations. This is true regardless of the number of **Insureds,** claims made or persons injured.

   **Our** total liability under Coverage F. for all medical expense for **Bodily Injury** to one person resulting from one accident will not exceed the limit for Coverage F. shown on the Declarations.

2. Severability of Insurance. This insurance applies separately to each **Insured.** This condition does not increase **our** limit of liability for one **Occurrence.**

3. Duties after Loss. In case of a loss, **you** must perform the following duties. **You** must cooperate with **us** in seeing that these duties are performed.
  a. give notice to **us** or **our** agent as soon as practicable setting forth:
    (1) identity of the policy and **Insured.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

        (2)   time, place, and facts of the accident or **Occurrence.**
        (3)   names and addresses of the claimants and witnesses.
  b.  immediately forward to **us** every document relating to the accident or **Occurrence.**
  c.  at **our** request, assist in:
        (1)   making settlement.
        (2)   enforcing a right of contribution or indemnity against a person or entity who may be liable to an **Insured.**
        (3)   conducting **Suits,** and attending hearings and trials.
        (4)   giving evidence and asking witnesses to attend.
        (5)   preserving any tangible property, or evidence, as long as **we** reasonably request.
  d.  under the coverage—Damage to Property of Others:
        (1)   submit to **us,** within sixty (60) days after the loss, a sworn proof of loss; and
        (2)   exhibit the damaged property, if within the **Insured's** control.
  e.  the **Insured** shall not, except at the **Insured's** own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the **Bodily Injury.**

4.  Duties of an Injured Person—Coverage F—Medical Payments to Others. The injured person or someone on behalf of the injured person will:
  a.  give **us** written proof of claim, under oath if required, as soon as possible.
  b.  authorize **us** to obtain copies of medical reports and records. The injured person will submit to physical examination by a physician **we** select. This may be as often as **we** require with good reason.
  c.  authorize **us** to speak with any doctor, dentist, or other health care provider who has provided treatment.

5.  **Suit** Against Us. No action can be brought against **us** unless there has been full compliance with the policy provisions. No one has a right to join **us** as party to an action against an **Insured.** No action with respect to Coverage E. can be brought against us until the obligation of the **Insured** has been determined by final judgment or agreement signed by **us.**

6.  Bankruptcy of an **Insured.** Bankruptcy or insolvency of an **Insured** will not relieve **us** of our obligations under this policy.

## *General Policy Conditions*

1.  **HOW YOUR POLICY MAY BE CHANGED**
  a.  Any part of this policy, which may be in conflict with statutes of the state in which this policy is issued, is hereby amended to conform.
  b.  Any **Insured** will automatically have the benefit of any broadening of coverage in this edition of the policy, as of the effective date of the change, provided it does not require more premium.
      This condition 1.b. does not apply when changes made include both broadening and restrictions in the coverage provided, whether or not such changes are made through a subsequent edition of this policy or by an amendatory endorsement attached to the policy.
  c.  A waiver or change of a part of this policy must be in writing by **us** to be valid. Our request for an appraisal or examination does not waive our rights.
  d.  The premium for the coverage provided by this policy and attached endorsements is based on information in our possession. Any change or correction in this information will allow **us** to make an adjustment of the premium.

2.  **CONCEALMENT OR FRAUD**
  a.  This policy does not provide coverage for any **Insureds** if **you** or any other **Insured,** either before or after a loss, other than a loss caused by fire, has:
        (1)   intentionally concealed or misrepresented any material fact or circumstance; or
        (2)   committed any fraud or made false statements;
      relating to such loss.
  b.  This policy does not provide coverage for loss caused by fire to the **Insured** who has:
        (1)   intentionally concealed or misrepresented any material fact or circumstance; or
        (2)   committed any fraud or made false statements;
      relating to this insurance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

3. **RENEWAL**

This policy is written for a specific policy period as shown on the Declarations. **We** will renew it for successive policy periods subject to the following conditions:

a. Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by **us** at the time.
b. All premiums, premium installment payments and fees must be paid when due.
c. Prior to the expiration of a policy period for which premium has been paid, **we** will mail a notice to the named **Insured** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us** at least forty-five (45) days before the renewal date of the policy. Proof of mailing will be proof of notice.
d. **You** agree to an interior inspection of **your** home by one of our representatives to determine **your** continued eligibility. Such inspection will not be performed more than once a year with prior advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of **your** policy.

4. **NONRENEWAL**

a. At the end of each policy period, **we** will have the right to refuse to renew this policy.
b. If **we** elect not to renew, **we** will mail written notice to the first named **Insured**, at the address shown in this policy, at least forty-five (45) days before the renewal date of this policy. The reason(s) for nonrenewal will be included. Proof of mailing shall be proof of notice.

**We** will not refuse to renew this policy solely because:
(1) **you** accepted **our** offer of earthquake coverage.
(2) the **Insured** dwelling is in a damaged condition due to a total loss covered under this policy.
(3) of an **Insured's** age.
(4) corrosive soil conditions exist on the **Residence Premises.**

c. For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.

5. **CANCELLATION DURING POLICY PERIOD**

Any named **Insured** may cancel this policy at any time by returning it to **us** or by notifying **us** in writing of the future date cancellation is to take effect.

**We** may cancel this policy only for the reasons stated in this condition by notifying the first named **Insured** in writing of the reason(s) and date cancellation takes effect. This cancellation notice will be mailed to the first named **Insured** at the address shown in the policy. Proof of mailing will be proof of notice.

a. When premium has not been paid, including additional premium due to a physical change in the **Insured** property or a change in its occupancy or use, whether payable to **us** or our agent or under a finance or credit plan, **we** may cancel at any time by giving notice at least ten (10) days before cancellation takes effect.
b. When this policy has been in effect for less than sixty (60) days and is not a renewal with **us**, **we** may cancel for any reason except as stated below by giving notice at least twenty (20) days before cancellation takes effect.

**We** will not cancel this policy solely because:
(1) **you** have accepted our offer of earthquake coverage.
(2) corrosive soil conditions exist on the Residence Premises.

c. When this policy has been in effect for sixty (60) days or more, or at any time if it is a renewal, **we** may cancel if:
(1) the named **Insured** has been convicted of a crime having as one of its necessary elements an act increasing any hazard **Insured** against;
(2) **we** discover fraud or material misrepresentation by either:
(a) an **Insured** or an **Insured's** representative in obtaining this insurance; or
(b) the named **Insured** or representative is pursuing a claim under this policy; or
(3) **we** discover grossly negligent acts or omissions by an **Insured** or an **Insured's** representative that substantially increase any of the hazards insured against; or
(4) physical changes in the covered property result in the property becoming uninsurable.

This can be done by giving notice at least thirty (30) days before cancellation takes effect.

d. When this policy is written for a period longer than one year, **we** may cancel for any reason at its anniversary by giving notice at least forty-five (45) days before cancellation takes effect.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to **us**, **we** will refund it within twenty-five (25) days after **we**:

    (1)  send the cancellation notice to **you**; or

    (2)  receive **your** written request of cancellation.

6. **POLICY TRANSFER**

This policy may be transferred to another only with our written consent.

7. **SUBROGATION**

    a.  When **we** have paid **you** for a loss covered under this policy and **you** receive payment for the same loss from another person, entity or organization, the amount received will be held by **you** in trust for **us** and reimbursed to **us** to the extent of our payment.

    b.  An **Insured** may, before loss occurs, waive in writing all rights of recovery against any person. The **Insured** will provide **us** with proof of the waiver, when requested by **us**. If not waived, when **we** pay a loss, an **Insured's** right to recover from someone else becomes ours up to the amount **we** paid. An **Insured** must protect these rights and help **us** enforce them.

    c.  This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

8. **DEATH**

If **you** die, **we** continue to insure:

    a.  the legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death.

    b.  a member of **your** household who is an **Insured** at the time of death, but only while a resident of the Residence Premises.

    c.  with respect to **your** property, the person having proper custody of the property until appointment of a legal representative.

9. **ADDITIONAL INSURED - NON OCCUPANT**

An additional **Insured** may be named in this policy. The additional **Insured's** interest in the Residence Premises is protected under Coverage A. and Coverage B. The additional **Insured** is also protected under Coverage E. for liability from the ownership, maintenance, or use of the Residence Premises. This provision does not increase the amount of insurance.

This coverage does not apply to:

    a.  an employee;

    b.  a Residence Employee; or

    c.  a temporary employee that substitutes for a permanent Residence Employee on leave or used to meet seasonal or short term workload conditions.

10. **OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**

The named **Insured** may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment premium payment charge. **Your** agent or sales representative can provide more information.

11. **NON-SUFFICIENT FUNDS AND LATE PAYMENT CHARGES**

The company reserves the right to impose a fee for:

    a.  any premium that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments.

    b.  any reinstatement of the policy if premium payment is received after the cancellation date. This is under the terms and conditions approved where required by the Department of Insurance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY                                   PERSONAL HOME POLICY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CRESTBROOK PROTECTION

For an additional premium the following coverages apply.

1.   The following is added to the definition of **Insured**:

Trusts or other entities owned by an **Insured** with a financial interest in the **Residence Premises** are protected under Coverage A—**Dwelling** and Coverage B—**Other Structures**. Coverage also applies under Coverage E—**Personal Liability** for liability from the ownership, maintenance, or use of the **Residence Premises**. This provision does not increase the amount of insurance.

This coverage does not apply to:

a.   an **employee**;

b.   a **Residence Employee**; or

c.   a temporary employee that substitutes for a permanent **Residence Employee** on leave or used to meet seasonal or short term workload conditions.

Section I—**Property Coverages** is amended as follows:

2.   Under Coverage C—**Personal Property**, **Special Limits of Liability**, the following apply;

a.   Item 1. limit is increased to $25,000.

b.   Item 3. is eliminated in its entirety.

c.   Item 4. Is eliminated in its entirety.

d.   Item 5. limit is increased to $5,000.

e.   Item 12. limit is increased to $100,000.

3.   Under Coverage D—**Loss of Use**, **Additional Living Expense** is replaced with the following:

**Additional Living Expense.** If a covered loss requires **you** to leave the **Residence Premises, we** will pay the reasonable increase in living expenses **you** incur to maintain **your** normal standard of living. **We** cover this increase for the reasonable amount of time required to restore **your** Dwelling or other permanent structure to a habitable condition, or if **you** or members of **your** household permanently relocate, the shortest amount of time required to settle elsewhere. However, if **you** are newly constructing **your** Dwelling or other permanent structure or constructing additions, alterations, or renovations to **your** Dwelling or other permanent structure at the time of a covered loss, **we** only cover the increase in **your** normal living expenses incurred by **you** for the reasonable amount of time required to restore the Dwelling or other permanent structure to the condition it was in prior to the covered loss. This period of time is not limited by the expiration of this policy.

4.   **Additional Property Coverages** is amended as follows:

Paragraph 1.b. of **Debris Removal** is replaced with the following:

b.   **We** will pay the reasonable expenses to remove debris of a covered loss from the property. **We** will also pay up to a total of $5,000 from the **Residence Premises** to remove trees from the **Residence Premises** if felled by the peril of windstorm, hail, weight of ice or snow or sleet when there is no damage to covered property.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

Paragraph 3. **Trees, Shrubs, Plants and Lawns** is replaced with the following:

3. **Trees, Shrubs, Plants and Lawns. We** will pay up to five percent (5%) of the coverage limit for Coverage A—**Dwelling** but no more than $10,000 for any one tree, shrub, or plant. Landscaping does not include forestry or brush.

   **We** will only pay for losses caused by:

   a. aircraft;

   b. fire, lightning or explosion;

   c. riot or civil commotion;

   d. a vehicle not owned or operated by someone who lives at the **Residence Premises;** or

   e. theft, attempted theft, vandalism or malicious mischief.

   This coverage applies only if **you** restore the damaged landscaping within one hundred eighty (180) days of the loss.

   **We** do not cover property that is grown for **Business** purposes or property that is part of, or a continuation of, a forest including national forest or wildlife preserve.

   This coverage is additional insurance.

Paragraph 13. **Lock Replacement** is replaced with the following:

13. **Lock Replacement. We** will pay the reasonable expense to replace or rekey the exterior door locks on **your Residence Premises.** This coverage applies only if the keys to **your Residence Premises** are stolen. **You** must notify **us** within seventy-two (72) hours of discovering the keys have been stolen. No deductible applies to this coverage.

Paragraph 14. **Ordinance or Law** is amended as follows:

   The following sentence is deleted:

   This is additional coverage.

   The following sentence is deleted:

   The most **we** will pay for this coverage is one hundred percent (100%) of the Coverage A—**Dwelling** limit of liability shown on the Declarations.

   The following sentence is added:

   For losses as a result of wildfire or fire resulting from an earthquake, the most **we** will pay is two hundred percent (200%) of the Coverage A—**Dwelling** limit of liability shown in the Declarations. No coverage applies if the Difference in Conditions endorsement is shown on the Declarations. Earthquake includes land shock waves or tremors before, during or after a volcanic eruption. One or more earthquake shocks that occur within a seventy-two (72) hour period constitute a single earthquake.

   All other provisions of the **Ordinance or Law** coverage section are unchanged and apply.

Paragraph 15. **Data Restoration** is replaced with the following:

15. **Data Restoration. We** will pay up to a total of $25,000 for expenses incurred by **you** to replace or recreate **your** lost personal data stored on a personal computer or portable computing devices that **you** own or lease. Lost personal data must be the result of a covered loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

Paragraph 19. **Damaged Caused by Domestic Animals** is replaced by the following:

19. **Damaged Caused by Domestic Animals. We** cover direct physical loss to covered property when such loss is caused by a domestic animal. The maximum **we** will pay for this coverage is $25,000.

5. The following are added to **Additional Property Coverages**:

**Water Shut-Off Device Coverage.** After **your** first covered water damage loss by this policy, **we** will pay for reasonable costs **you** incur up to $5,000 for the installation of an approved water shut-off device. This payment will not increase the amount of coverage. This additional coverage only applies if the loss exceeds the location deductible.

**Kidnap and Ransom Expense Coverage.**

**We** will pay up to $25,000 to reimburse any of the following expenses related to a **Kidnapping** of an **Insured:**

   a.  attorney fees to negotiate a settlement;

   b.  lost income of the kidnapped **Insured;**

   c.  travel;

   d.  lodging costs; and

   e.  telephone costs.

No coverage applies to ransom payments caused by or in any way related to the **kidnapping** of an **Insured.**

**Kidnapping** is defined as the crime of unlawfully seizing and carrying away a person by force or fraud, or seizing and detaining a person against his or her will with intent to carry away at a later time.

**Pet Injury Coverage.** If **your** pet is injured as a result of a covered loss, **we** will pay up to $5,000 for the medical expenses for the resulting injuries. Coverage applies only to expenses for those injuries resulting directly from the covered cause of loss. This limit is the maximum **we** will pay for a covered loss regardless of the number of pets injured.

**Disability Alterations Coverage.** If **you** or an **Insured** residing in **your** household is permanently disabled by an accidental injury, **we** will pay to update the **Residence Premises** to meet minimum standards for the disability. **We** will pay up to five percent (5%) of the Coverage A—**Dwelling** limit of liability stated on the Declarations up to a maximum of $50,000.

**Realty Tax Increased Assessment Coverage. We** will pay up to $25,000 for any additional county tax assessments if the assessment is increased following a covered total loss and such loss was the cause of the tax increase. This coverage only applies to the first assessment generated after **your** home has been reconstructed.

Section I—**Property Conditions** is amended as follows:

6. Paragraphs 4.b. of **Loss Settlement** are deleted and replaced with the following:

   b.  Covered losses to **your** property under Coverage A—**Dwelling** and Coverage B—**Other Structures** will be settled as follows:

       **We** will pay the cost of repair or replacement, without deduction for depreciation and without regard to the limit of liability shown on the Declarations.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

However, in the event of a covered loss to the Dwelling that occurs during construction of additions or renovations **we** will pay no more than **Actual Cash Value:**

(1) if the construction or renovation increases the replacement cost of the Dwelling or Other Structure more than five percent (5%) or $500,000, whichever is less; or

(2) at the time of loss **you** have not occupied the Dwelling for more than thirty (30) consecutive days due to construction or renovation;

This limitation does not apply if, prior to a loss, **you** have notified **us** of such construction or renovation and **we** have provided **you** with **our** written consent.

For losses as a result of wildfire or fire resulting from an earthquake, the most **we** will pay is two hundred percent (200%) of the Coverage A—**Dwelling** limit of liability shown in the Declarations. No coverage applies if the Difference in Conditions endorsement is shown on the Declarations. Earthquake includes land shock waves or tremors before, during or after a volcanic eruption. One or more earthquake shocks that occur within a seventy-two (72) hour period constitute a single earthquake.

**You** agree to:

(1) Insure **your** Dwelling and Other Structures to at least one hundred percent (100%) of its replacement cost as determined by **our** replacement cost estimation or an inspection performed by a recognized appraisal agency authorized by **us;**

(2) Repair or replace the Dwelling and Other Structures with materials of like kind and quality on the **Residence Premises**; or, for no greater cost, buy or build a Dwelling at another location. If **you** choose not to repair or replace, **we** will only pay **you** the cost to repair or rebuild the damaged Dwelling at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less.

(3) Promptly notify **us** of a renovation that increases the replacement cost of the Dwelling or Other Structure more than five percent (5%) or $500,000, whichever is less;

(4) Notify **us** prior to the start of a **renovation** which will cause **your** Dwelling to be:

    i.   vacant; or

    ii.  not occupied by **you** for more than thirty (30) consecutive days;

(5) Accept annual adjustments due to **Inflation Protection Coverage**; and

(6) Pay any additional premium.

If a change in the amount of coverage for your Dwelling is made, the limit applying to Coverage C—**Personal Property** will be adjusted proportionately.

7. Paragraph 4.c. of **Loss Settlement** is deleted in its entirety.

8. Paragraph 2. **Deductible** of Section I—**Property Conditions** is replaced with the following:

2. **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy, applicable to a covered loss, is the amount of loss paid by the **Insured.** Different deductible amounts may apply to different causes of loss. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property. **We** pay for covered loss above the applicable deductible amount.

The deductible will not apply to a covered loss of more than $50,000. This waiver of deductible does not apply to:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

    a.  special deductibles for wind, hurricane, hail, or earth movement including earthquake; or

    b.  separate coverage deductibles contained within policy provisions or shown on the Declarations.

9.  Coverage F—**Medical Payments to Others**

When Section II—**Personal Liability** is purchased for this policy from us, the limit of liability is increased to $25,000.

10.  The following is added to **General Policy Conditions:**

**Family Safety**

**We** will pay up to $25,000 for counseling services to help an **Insured** after a covered loss or **occurrence**. This coverage will also apply for an **Insured** if a victim of a stalking, home invasion or abduction. Payment will be excess of any such services provided by **your** medical insurance and the provider of the services will need to be approved by **us** prior to use. Coverage will apply for a period of up to one year from the date of covered loss or **occurrence**.

**All other provisions of this policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## IDENTITY THEFT OR IDENTITY FRAUD EXPENSES COVERAGE

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

In consideration of the premium charged, the policy is amended to provide coverage for **Identity Theft or Identity Fraud.** Coverage is subject to all terms and conditions in the policy, except as changed by this endorsement. It is agreed that coverage is hereby amended as follows:

**Additional Definitions applicable:** For purposes of this endorsement only:

1. **"Identity Theft or Identity Fraud"** means the act of knowingly using or transferring without legal authority personal identifying information of an **Insured** such as name, social security number, driver's license number, bank account number(s) or credit card number(s) with the intent to commit, or to aid or abet another to commit, any illegal activity that constitutes a misdemeanor or felony under any applicable state or local law or violation of federal law.

2. "Expenses" means:
   a. Costs of executing affidavits or similar documents attesting to theft or fraud required by credit grantors, credit agencies or similar financial institutions.

   b. Costs for certified mail to credit grantors, credit agencies, or similar financial institutions and law enforcement agencies.

   c. Lost income resulting from time taken off work to complete theft or fraud affidavits, talk to or meet with credit grantors, credit agencies or similar financial institutions, law enforcement agencies and or legal counsel. Payment of lost income is included within the **Identify Theft or Identity Fraud Expense** Coverage Limit of Liability and payable as outlined in this endorsement.

   d. Loan application fees for re-applying for a loan or loans where the original application is rejected solely because the lender received incorrect credit information.

   e. Reasonable attorney fees incurred by **you** as a result of **Identity Theft or Identity Fraud** to:
      (1) Defend lawsuits brought against an **Insured** by financial institutions, merchants, or collection agencies;
      (2) Remove any civil or criminal judgments wrongly entered against an **Insured;** or
      (3) Challenge the completeness or accuracy of any information in a consumer credit report.

   f. Charges incurred for long distance telephone calls to law enforcement agencies, merchants, credit grantors, credit agencies or similar financial institutions to report or discuss an actual **Identity Theft or Identity Fraud.**

The following additional coverage is added under Section **I:**

**Identity Theft or Identity Fraud Expenses**

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an insured, is considered to be one identity theft or identity fraud, even if a series of acts continues into a subsequent policy period.

- **Identity Theft or Identity Fraud** must occur while this coverage is part of **your** policy; and

- **Identity Theft or Identity Fraud Expenses** must be incurred while this coverage is part of your policy or within one hundred eighty (180) days after this coverage is terminated.

If this coverage is terminated, **our** total liability for **Expenses** incurred by **you** during the one hundred eighty (180) days after the termination will not exceed the amount equaling the difference between

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

the limit at the time coverage terminated and the amount **we** already reimbursed you during that policy period.

**We** may offer, at **our** option, to refer **you** to a firm that:

- **you** can authorize to work on your behalf to assist you in reporting and addressing the effects of **Identity Theft or Identity Fraud** to which coverage applies;
- will consult with **you** on measures **you** might take if **you** reasonably suspect that **you** have already become, or may become a victim of **Identity Theft or Identity Fraud** to which this coverage applies; or
- if **we** do provide you with such a referral, **we** will pay, subject to the terms of the referral we provide, that firm's charges for the work they perform consistent to the terms of **our** referral, and those charges will not be subject to the limits for **Identity Theft or Identity Fraud** coverage.

**We** will pay up to the limit shown on the Declarations for **Expenses** incurred by an **Insured** as the direct result of any single **Identity Theft or Identity Fraud** first discovered or learned of during the policy period. **Our** total liability for **Identity Theft or Identity Fraud Expenses** Coverage **you** incur during the policy period will not exceed this limit regardless of the number of instances or when they occurred, or the number of persons making a claim for **Identity Theft or Identity Fraud.** Payment of lost income is included within the **Identify Theft or Identity Fraud Expenses** Coverage Limit of Liability and payable up to the amounts shown below:

**Lost Income Payment Schedule**

| Identity Theft or Identity Expenses Limit of Liability | Fraud Lost Income Per Day Maximum | Total Lost Income Limit |
|---|---|---|
| $ 25,000 | $ 250 | $ 5,000 |
| $ 50,000 | $ 500 | $10,000 |
| $100,000 | $1,000 | $20,000 |

This coverage is additional insurance.

No deductible applies to Identity **Theft or Identity Fraud Expenses Coverage.**

**EXCLUSIONS**

The following additional exclusions apply to this coverage:

We do not cover:

1. **Expenses** arising out of the business pursuits of any **Insured.**

2. **Expenses** incurred due to any fraudulent, dishonest or criminal act by an **Insured** or any person acting in collusion with an Insured, or by any authorized representative of an **Insured,** whether acting alone or in collusion with others.

3. Loss other than **expenses.**

4. Loss insured under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, under Section I of the policy.

**SECTION I—CONDITIONS**

Under **"Your Duties after Loss"** the following is added:

In case of loss, **you** must submit to **us,** within sixty (60) days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief evidence or affidavit supporting a claim including bills, receipts, or other records that support a claim for **Expenses** under **Identity Theft or Identity Fraud Expenses** Coverage. It should state the amount and cause of loss.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT

As respects this Equipment Breakdown Enhancement Endorsement, this endorsement changes coverage provided by this policy.  Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

"Equipment Breakdown" coverage is subject to a $100,000 per Occurrence Limit of Liability.
"Equipment Breakdown" coverage is subject to a $500 per Occurrence Deductible.

### DEFINITIONS

The following **Definitions** are added as they relate to coverage under this endorsement:

1.  "Equipment Breakdown."

    "Equipment Breakdown" as used herein means:

    **a.**   Physical loss or damage both originating within:

    **(1)**   Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

    **(a.)**   waste disposal piping;

    **(b.)**   any piping forming part of a fire protective system; and

    **(c.)**   any water piping other than:

    **1)**   boiler feed water piping between the feed pump and the boiler;

    **2)**   boiler condensate return piping; or

    **3)**   water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes

    **(2)**   All mechanical, electrical, electronic or fiber optic equipment; and

    **b.**   Caused by, resulting from, or consisting of:

    **(1)** Mechanical breakdown;

    **(2)** Electrical or electronic breakdown; or

    **(3)** Rupture, bursting, bulging, implosion, or steam explosion. However,

    "Equipment Breakdown" will not mean:

    Physical loss or damage caused by or resulting from any of the following; however if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

    **(1)** All losses excluded in the underlying policy; and

    **(2)** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

    Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement and flood.

2.  "Green" as used means products, materials, methods and processes certified by a "Green Authority" that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

3.  "Green Authority" as used means an authority on "Green" buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED  ), "Green" Building Initiative Green Globes, Energy Starr Rating System or any other recognized "Green" rating system.

3.  "Motor Vehicle" as used herein means any self propelled land or amphibious vehicle.

CRESTBROOK INSURANCE COMPANY

**SECTION I - Property Coverages**

The following **Coverage Agreements** are deleted and replaced with the following:

**We** cover all risk of accidental direct physical loss to property described in Coverages A, B and C below, including "equipment breakdown", except for losses excluded under Section I – Property Exclusions.

**SECTION I - Additional Property Coverages**

The following **Additional Property Coverages** are added as they relate to coverage under this endorsement:

**1. Expediting Expense**

When an "equipment breakdown" results in damage to covered property, "we" pay the reasonable cost to:

**a.**   make temporary repairs;

**b.**   expedite permanent repairs; and

**c.**   expedite permanent replacement

Reasonable extra cost means the extra cost of temporary repair and of expediting the repair of "your" damaged property including overtime and the extra cost of express or other rapid means of transportation.

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage

**2. Refrigerated Property**

"We" pay for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by an "equipment breakdown" to personal property covered by this policy.

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.

**3. Pollutant Clean Up and Removal**

"We" pay for pollutant clean up and removal for loss resulting from an "equipment breakdown."

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.

**4. Off-Premises Coverage**

We will pay for loss or damage to covered property resulting from a covered "Equipment Breakdown" while temporarily at a premises or location that is not a "residence premises". This coverage does not apply to any "Motor Vehicle".

The most "we" will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per occurrence limit for Equipment Breakdown Coverage.

**SECTION I – Property Exclusions**

The following **Property Exclusions** are deleted and replaced with the following:

In the Personal Home Policy P1405:

**z. (2)** Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

In the Personal Condo Policy P1406, this replaces item **y.(2).**

CRESTBROOK INSURANCE COMPANY

## SECTION I – CONDITIONS

The following **Conditions** are deleted and replaced with the following:

**4. Loss Settlement**

    **a.** We will pay you the amount you spend to repair or replace your Covered Property damaged by an "Equipment Breakdown". Our payment will be the lesser of:

        **(1)** The cost at the time of the "Equipment Breakdown" to repair the damaged Covered Property;

        **(2)** The cost at the time of the "Equipment Breakdown" to replace the Covered Property with property of like kind, capacity, size and quality; or

        **(3)** The amount you actually spend that is necessary to repair or replace the damaged property.

    **b.** As respects your Covered Property, if the cost of repairing or replacing only a part of the Covered Property is greater than:

        **(1)** The cost of repairing the Covered Property; or

        **(2)** The cost of replacing the entire Covered Property on the same site,

    We will pay the lesser amount.

    The repair parts or replacement Covered Property must be:

        **(1)** Of like kind, capacity, size and quality; and

        **(2)** Used for the same purpose.

**16.** "Equipment Breakdown" coverage does not extend beyond the "Residence Premises" except as provided by the Off Premises Coverage under Additional Coverages.

**17. Green Environmental, Safety, and Efficiency Improvements**

    If Covered Property requires repair or replacement due to an "Equipment Breakdown", we will pay;

    **a.** The "your" additional cost to repair or replace that property with equipment that is better for the environment, safer, or more efficient than the equipment being repaired or replaced.

    **b.** The additional reasonable and necessary fees incurred by the Insured for an accredited professional certified by a "Green Authority" to participate in the repair or replacement of physically damaged Covered Property as "Green".

    **c.** The additional reasonable and necessary cost incurred by the Insured for certification or recertification of the repaired or replaced Covered Property as "Green".

    **d.** The additional reasonable and necessary cost incurred by the Insured for "Green" in the removal, disposal or recycling of damaged Covered Property.

    **e.** The Loss of Use (if covered within the Policy to which this Equipment Breakdown Enhancement Endorsement – Green Environmental and Efficiency Improvements is attached) loss during the additional time required for repair or replacement of Covered Property, consistent with "Green", in the coverages above.

    However, "we" will not pay more than 150% of what the cost would have been to repair or replace such property with like kind and quality inclusive of fees, costs, and any loss of use loss incurred as stated above.

These **Conditions** will be part of, and not an addition to, the limit of liability per loss or any other sublimits of this Policy.

# COMMUNITY SERVICE STATEMENT

## CRESTBROOK INSURANCE COMPANY

# <u>HO00038782-01</u>      Policyholder Number (for New Business Only)

This information is requested by the State of California in order to monitor the insurer's compliance with the law. All new policyholders are requested to voluntarily provide the following information.

*No such information shall be used for purposes of underwriting or rating any policyholder.*

Policyholder's Name and Address (to be provided in order to refer back to the policy) Note: use additional forms if needed.

<u>Yury Kapgan</u>

<u>143 Foxtail Dr</u>

<u>Santa Monica, CA, 90402-2047</u>

<u>Policy Type</u>

Private Passenger Auto-Liability    _____          Homeowners        __X__

• *If policyholder does not wish to provide the Department of Insurance with this information, please check here.* ____

Check the Race or National Origin as it applies to the policyholder(s). For the purpose of completing this form, the policyholder is defined as: an individual, spouse, domestic partner, or business partner(s) named on the policy.

| | POLICYHOLDER | | | CO-POLICYHOLDER | | |
|---|---|---|---|---|---|---|
| | Male | Female | Business | Male | Female | Business |
| African-American | ____ | ____ | ____ | ____ | ____ | ____ |
| American Indian or Alaskan Native | ____ | ____ | ____ | ____ | ____ | ____ |
| Asian/Pacific Islander | ____ | ____ | ____ | ____ | ____ | ____ |
| Latino | ____ | ____ | ____ | ____ | ____ | ____ |
| White | ____ | ____ | ____ | ____ | ____ | ____ |
| Other | ____ | ____ | ____ | ____ | ____ | ____ |

## Please return the completed form to:

Crestbrook Insurance

8877 N. Gainey Center Dr.
Scottsdale, AZ 85258

Re: CA Community Service
Statement

G8061CA (01-15)

Electronically FILED by Superior Court of California, County of Los Angeles on 07/01/2020 04:06 PM Sherri R. Carter, Executive Officer/Clerk of Court, by B. McClendon,Deputy Clerk
20SMCV00885

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Yury Kapgan, in pro per<br>143 Foxtail Drive<br>Santa Monica, CA 90402<br><br>TELEPHONE NO.: 213-443-3000     FAX NO. *(Optional):*<br>ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: **1725 Main Street**
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME: Santa Monica Superior Court

CASE NAME:
Yury Kapgan v. Crestbrook Insurance Company

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **20SMCV00885**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [x] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 2
5. This case [ ] is [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 30, 2020

Yury Kapgan
_____
(TYPE OR PRINT NAME)                    ▶ _____
                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case–Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief From Late Claim
　Other Civil Petition

| SHORT TITLE: KAPGAN v. CRESTBROOK INSURANCE CO. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: KAPGAN v. CRESTBROOK INSURANCE CO. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons – See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06), (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☑ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: KAPGAN v. CRESTBROOK INSURANCE CO. | | | CASE NUMBER | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons – See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ – Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: KAPGAN v. CRESTBROOK INSURANCE CO. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☑ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | 143 FOXTAIL DR |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| SANTA MONICA | CA | 90402 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _West_ _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: _June 30, 2020_



(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

**Unlimited Civil – General Independent Calendar (IC)**

1. Alternative Dispute Resolution (ADR) Information Packet (LASC CIV 271 Rev. 1/20)     2 pages
2. Voluntary Efficient Litigation Stipulations (LACIV 230 Rev. 4/11)     9 pages



# Superior Court of California, County of Los Angeles

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 Rev. 01/20
For Mandatory Use

1

How to arrange mediation in Los Angeles County

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/CI0047.aspx

**Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/CI0109.aspx**
**For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm**

LASC CIV 271 Rev. 01/20
For Mandatory Use

2

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    _(INSERT DATE)_                                   _(INSERT DATE)_
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____          ➤ _____
   (TYPE OR PRINT NAME)                               (ATTORNEY FOR PLAINTIFF)
Date: _____

_____          ➤ _____
   (TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)
Date: _____

_____          ➤ _____
   (TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)
Date: _____

_____          ➤ _____
   (TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)
Date: _____

_____          ➤ _____
   (TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)
Date: _____

_____          ➤ _____
   (TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)
Date: _____

_____          ➤ _____
   (TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| **TELEPHONE NO.:**    FAX NO. (Optional):<br>**E-MAIL ADDRESS (Optional):**<br>**ATTORNEY FOR (Name):** | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| **COURTHOUSE ADDRESS:** |
| **PLAINTIFF:** |
| **DEFENDANT:** |

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

  iii. Be filed within two (2) court days of receipt of the Request; and

  iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

 c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

 d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

 e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ (ATTORNEY FOR _____ )

➤ (ATTORNEY FOR _____ )

➤ (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:              FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                     FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE** <br> (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

☐   Request for Informal Discovery Conference
☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Santa Monica Courthouse<br>1725 Main Street, Santa Monica, CA 90401 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**07/01/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: ___ B. McClendon ___ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>20SMCV00885 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Mark H. Epstein | R | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on  07/02/2020
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By B. McClendon _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

<u>INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES</u>

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

<u>APPLICATION</u>
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

<u>PRIORITY OVER OTHER RULES</u>
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

<u>CHALLENGE TO ASSIGNED JUDGE</u>
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

<u>TIME STANDARDS</u>
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

<u>COMPLAINTS</u>
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

<u>CROSS-COMPLAINTS</u>
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

<u>STATUS CONFERENCE</u>
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

<u>FINAL STATUS CONFERENCE</u>
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

<u>SANCTIONS</u>
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

<u>Class Actions</u>
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

<u>*Provisionally Complex Cases</u>
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

EXHIBIT "B"

1  MARC S. HINES (SBN 140065)
   mhines@lawhhp.com
2  CHRISTINE EMANUELSON (SBN 221269)
   cemanuelson@lawhhp.com
3  ELAN J. DUNAEV (SBN 310060)
   edunaev@lawhhp.com
4  **HINES HAMPTON PELANDA LLP**
   30 Executive Park, Suite 210
5  Irvine, California 92614
   Tel.:   (714) 513-1122
6  Fax:   (714) 242-9529

7  Attorneys for Defendant
   Crestbrook Insurance Company
8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10              **IN AND FOR THE COUNTY OF LOS ANGELES**

11 | YURY KAPGAN, an individual,            | **Case No.:** 20SMCV00885
12 |              Plaintiff,
13 |       v.                               | **CRESTBROOK INSURANCE
                                              COMPANY'S ANSWER TO
14 | CRESTBROOK INSURANCE                     PLAINTIFF'S COMPLAINT AND
     COMPANY, and DOES 1-50, inclusive,     DEMAND FOR TRIAL BY JURY**
15 |
16 |              Defendant.
17

18

19         Defendant Crestbrook Insurance Company ("Crestbrook") answers Plaintiff Yury

20 Kapgan's ("Plaintiff") unverified Complaint, and alleges affirmative defenses as follows:

21                            **<u>GENERAL DENIAL</u>**

22         1.      Pursuant to the provisions of <u>Code of Civil Procedure</u> § 431.30, Crestbrook

23 denies, generally and specifically, each and every allegation contained in each cause of

24 action of the Complaint and further denies that Plaintiff was damaged in the sums alleged,

25 or in any other manner, or in any sum whatsoever.

26 / / /

27 / / /

28 / / /

                                        1

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### [Statute of Limitations & Suit Limitation Provision]

2.     Crestbrook alleges that Plaintiff's suit is barred by the statute of limitations and repose set forth in California law, other applicable statutory authority, and/or the internal suit limitation provision in the Policy, which states in pertinent part:

> *Property Conditions*
>
> . . .
>
> 8.     **Suit Against Us.**  No action can be brought against us unless  there has been full compliance with the policy provisions.  Any action must be started within one year after the date of loss or damage.

## SECOND AFFIRMATIVE DEFENSE

### [Exclusion for Wear and Tear, etc.]

3.     Crestbrook alleges that Plaintiff's claim is barred in whole or in part by the "wear and tear, etc." exclusion in the Policy, which states in pertinent part as follows:

> *Property Exclusions*
>
> 1.     We do not cover loss to any property resulting directly or indirectly from any of the following:
>
> . . .
>
> z.     Gradual or Sudden Loss due to:
>> (1)     Wear and tear, marring, deterioration;
>> (2)     inherent vice, latent defect, mechanical breakdown;
>> (3)     smog, rust;
>> (4)     smoke from agricultural smudging or industrial operations;
>> (5)     settling, cracking, shrinking, bulging or expansion of pavements, patios, Foundations, walls, floors, roofs or ceilings;

2

CRESTBROOK'S ANSWER TO THE COMPLAINT

(6)    root growth, movement or action;

## THIRD AFFIRMATIVE DEFENSE

### [Exclusion for Biological Deterioration]

4.    Crestbrook alleges that Plaintiff's claim is barred in whole or in part by the "Biological Deterioration" exclusion in the Policy, which states in pertinent part as follows:

> *Property Exclusions*
>
> 1.    We do not cover loss to any property resulting directly or indirectly from any of the following.
>
> . . .
>
> **k.**    Biological Deterioration or Damage, except as provided by Section I—Additional Property Coverages—Biological Deterioration or Damage Clean Up and Removal.

5.    All or part of the property loss at issue in the Complaint was caused by Biological Deterioration or Damage.  Crestbrook has already indemnified Plaintiff for Biological Deterioration or Damage Clean Up and Removal under the Policy as provided by Section I—Additional Property Coverages—Biological Deterioration or Damage Clean Up and Removal.  To the extent the limits of liability of this Additional Property Coverage have been exhausted, no additional benefits are owed under that additional coverage and all remaining loss caused by Biological Deterioration or Damage falls within the exclusion set forth above.

## FOURTH AFFIRMATIVE DEFENSE

### [Exclusion for Water Damage]

6.    Crestbrook alleges that Plaintiff's claim is barred in whole or in part by the "water damage" exclusion in the Policy, which states in pertinent part as follows:

> *Property Exclusions*
>
> 1.    We do not cover loss to any property resulting directly or indirectly from any of the following.

3

CRESTBROOK'S ANSWER TO THE COMPLAINT

. . .

b.     Water or damage caused by water-borne material.  Loss resulting from water-borne material damage described below is not covered.  Water and water-borne material damage means:

(1)     Flood, surface water, waves, tidal water, overflow of water from a body of water, or water-borne material from any of these;

(2)     run off of water or water-borne material from a  paved surface, driveway, walkway, patio, or other similar surface; or spray from any of these, even if driven by wind.

(3)     water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, Foundation, swimming pool, or other structure.

7.     All or part of the property loss at issue in the Complaint was caused by water or damage caused by water-borne material as set forth in the Policy.

**FIFTH AFFIRMATIVE DEFENSE**

**[Exclusion for Faulty Construction]**

8.     Crestbrook alleges that Plaintiff's claim is barred in whole or in part by the "faulty construction" exclusion in the Policy, which states in pertinent part as follows:

***Property Exclusions***

1.     We do not cover loss to any property resulting directly or indirectly from any of the following.

. . .

p.     A fault, weakness, defect or inadequacy in the:

(1)     specifications, planning, zoning;

4

1                 (2)     design, workmanship, construction, materials;

2                 (3)     surveying, grading, backfilling;

3                 (4)     development or maintenance;

4             Of any property on or off the Residence Premises, whether

5             intended or not.  However, any resulting loss is covered unless

6             another exclusion applies.

### SIXTH AFFIRMATIVE DEFENSE

**[Laches]**

9.     Crestbrook alleges that Plaintiff's claim is barred in whole or in part by the equitable doctrine of laches.  Plaintiff unreasonably delayed in asserting his present complaints about Crestbrook's handling and investigation of their claim, which has cause prejudice to Crestbrook.

### SEVENTH AFFIRMATIVE DEFENSE

**[Failure to Mitigate]**

10.     Assuming Plaintiff suffered any alleged damages, Crestbrook alleges that any recovery should be barred or limited by the failure of Plaintiff to minimize such damage.

### EIGHTH AFFIRMATIVE DEFENSE

**[Failure to Perform Conditions Precedent & Obligations]**

11.     Crestbrook alleges Plaintiff's claims are barred, in whole or in part, and any obligations Crestbrook may have are otherwise excused, as a result of Plaintiff's failure to perform conditions precedent and/or all obligations required of him under the policy of insurance at issue, including, but not limited to, the duties and conditions set forth under Property Conditions (Section 1), 3. Your Duties after Loss, of the applicable policy, and as a matter of law.

/ / /

/ / /

/ / /

## NINTH AFFIRMATIVE DEFENSE

### [Setoff, Reimbursement, Offset, Contribution, Indemnity]

12.     Crestbrook alleges it is entitled to offset, offset, contribution, and/or indemnity, and its obligations to Plaintiff, if any, and which obligations Crestbrook expressly denies, are reduced because any and all obligations alleged in the Complaint are owed in whole or in part by other parties, or for which other persons or entities have compensated Plaintiff.  Plaintiff's claims, and each of them, are barred or reduced due to payments by third parties, and Crestbrook is entitled to a set off, an offset, contribution, and/or indemnity for such payments.

## TENTH AFFIRMATIVE DEFENSE

### [Other Policy Restrictions, Exclusions, or Conditions]

13.     Plaintiff's claims, and each of them, are barred in whole or part pursuant to the restrictions, exclusions and/or conditions contained in the applicable policy of insurance, as well as the policy's other provisions and definitions.

## ELEVENTH AFFIRMATIVE DEFENSE

### [Reservation]

14.     Plaintiff has not plead his Complaint with sufficient particularity to allow Crestbrook to determine applicable affirmative defenses and so Crestbrook shall seek leave of this Court to amend this answer to the Complaint to insert additional affirmative defenses when, and if, the same have been ascertained.

WHEREFORE, Crestbrook prays for judgment as follows:

1.     That Plaintiff take nothing by way of his Complaint;

2.     That the Court enter judgment for Crestbrook;

3.     For costs incurred in defense of this action; and

/ / /

/ / /

/ / /

1

    4.     For such other and further relief as the Court may deem proper.

2

Dated:  August 12, 2020         **HINES HAMPTON PELANDA LLP**

3

4

            By:  _____

5

                Marc S. Hines

6

                Christine Emanuelson
                Attorneys for Defendant

7

                CRESTBROOK INSURANCE COMPANY

8

9

              **DEMAND FOR JURY TRIAL**

10

    PLEASE TAKE NOTICE that Crestbrook hereby demands a trial by jury.

11

Dated:  August 12, 2020         **HINES HAMPTON PELANDA LLP**

12

13

14

            By:  _____

15

                Marc S. Hines
                Christine Emanuelson

16

                Attorneys for Defendant
                CRESTBROOK INSURANCE COMPANY

17

18

19

20

21

22

23

24

25

26

27

28

CRESTBROOK'S ANSWER TO THE COMPLAINT

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 34 Executive Park, Suite 260, Irvine, CA 92614.

On August __12__, 2020, I served the foregoing document described as:

**CRESTBROOK INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY**

By sending a copy thereof enclosed in a sealed envelope, addressed as follows:

| |
|---|
| Yury Kapgan |
| 143 Foxtail Drive |
| Santa Monica, CA 90402 |
| 143foxtaildrive@gmail.com |
| |
| **Plaintiff, *In pro per*** |

[X]   **BY MAIL:** I deposited such envelope(s) in the mail at Irvine, California.   I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid the ordinary course of business.  I am aware that on motion of the party served, services is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed August __12__, 2020 in Irvine, California.

*Anna Cooley*

CRESTBROOK'S ANSWER TO THE COMPLAINT

EXHIBIT "C"

**CM-180**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| — Marc S. Hines (SBN 140065) <br> Christine M. Emanuelson (SBN 221269) <br> Hines Hampton Pelanda LLP, 30 Executive Park, Suite 210, Irvine, CA 92614 <br> TELEPHONE NO.: (714) 513-1122     FAX NO. *(Optional):*  (714) 242-9529 <br> E-MAIL ADDRESS *(Optional):*  mhines@lawhhp.com <br> ATTORNEY FOR *(Name):*  Defendant, Crestbrook Insurance Company | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE:  Santa Monica, CA 90401
BRANCH NAME: Santa Monica Superior Court

PLAINTIFF/PETITIONER:  Yury Kapgan

DEFENDANT/RESPONDENT:  Crestbrook Insurance Company

| NOTICE OF STAY OF PROCEEDINGS | CASE NUMBER: <br> 20SMCV00885 |
|---|---|
| | JUDGE: Hon. Judge Mark Epstein <br> DEPT.:  R |

**To the court and to all parties:**

1. Declarant *(name):* Marc S. Hines

   a. [✓] is [ ] the party   [✓] the attorney for the party  who requested or caused the stay.

   b. [ ] is [ ] the plaintiff or petitioner [ ] the attorney for the plaintiff or petitioner. The party who requested the stay has not appeared in this case or is not subject to the jurisdiction of this court.

2. This case is stayed as follows:

   a. [✓] With regard to all parties.

   b. [ ] With regard to the following parties *(specify by name and party designation):*

3. Reason for the stay:

   a. [ ] Automatic stay caused by a filing in another court. *(Attach a copy of the Notice of Commencement of Case, the bankruptcy petition, or other document showing that the stay is in effect, and showing the court, case number, debtor, and petitioners.)*

   b. [ ] Order of a federal court or of a higher California court. *(Attach a copy of the court order.)*

   c. [ ] Contractual arbitration under Code of Civil Procedure section 1281.4. *(Attach a copy of the order directing arbitration.)*

   d. [ ] Arbitration of attorney fees and costs under Business and Professions Code section 6201. *(Attach a copy of the client's request for arbitration showing filing and service.)*

   e. [✓] Other:  Crestbrook removed this case to federal court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  August 12, 2020

Marc S. Hines
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE)

---

Form Adopted for Mandatory Use
Judicial Council of California
CM-180 [Rev. January 1, 2007]

**NOTICE OF STAY OF PROCEEDINGS**

Cal. Rules of Court, rule 3.650
*www.courtinfo.ca.gov*

# PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 30 Executive Park, Suite 210, Irvine, CA 92614.

On August 13, 2020, I served the foregoing document described as:

**CRESTBROOK INSURANCE COMPANY'S NOTICE OF STAY OF PROCEEDINGS**

By sending a copy thereof enclosed in a sealed envelope, addressed as follows:

| |
|---|
| Yury Kapgan |
| 143 Foxtail Drive |
| Santa Monica, CA 90402 |
| 143foxtaildrive@gmail.com |
| |
| **Plaintiff, *In pro per*** |

[X ]  **BY MAIL:** I deposited such envelope(s) in the mail at Irvine, California.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid the ordinary course of business.  I am aware that on motion of the party served, services is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  **BY PERSONAL SERVICE:**  I caused a true and correct copy thereof enclosed in a sealed envelope to be delivered by hand to the above-named addressee(s).

[ ]  **BY FACSIMILE TRANSMISSION:**  I caused the above-referenced document to be transmitted to the person(s) set forth above, at the facsimile number(s) set forth on the attached service list.  The facsimile machine I used complied with rule 2003(3) and no error was reported by the machine.  Pursuant to rule 2005(i), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

[ ]  **BY ELECTRONIC MAIL TRANSMISSION:**  I caused the above-referenced document to be electronically transmitted to the person(s) set forth in the attached service list, at the e-mail address(es) set forth thereto.

[X]  **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed August 13, 2020, Irvine, California.

*Anna Cooley*
Anna Cooley

- 1 -
PROOF OF SERVICE